AMARILLO ABSTRACT AND TITLE COMPANY, Appellant,

v.

UNAUTHORIZED PRACTICE OF LAW COMMITTEE OF STATE BAR OF TEXAS, Appellee.

No. 6880.

Court of Civil Appeals of Texas.

Amarillo.

Dec. 7, 1959.

Rehearing Denied Jan. 4, 1960.

Clayton & Harris, Amarillo, for appellant.

Philip E. Hamner, San Antonio, Davis Grant, Austin, for appellee.

CHAPMAN, Justice.

This is an appeal from a summary judgment granted appellee, The Unauthorized Practice of Law Committee of the State Bar of Texas, against appellant, Amarillo Abstract and Title Company, a corporation, for exceeding its corporate powers and privileges by engaging in the unauthorized practice of law. In its first 3 points appellant, in effect attacks the action of the trial court in failing to sustain its plea in abatement challenging the authority of appellee to maintain the suit to enjoin appellant corporation from practicing law. In its points 4 through 7 it attacks the failure of the trial court to suppress the depositions of William S. Harris and Juanita Collier by which it inquired into the business affairs and records of appellant corporation. In its points 8 through 18 it challenges the action of the trial court in granting summary judgment from the record made.

In view of the fact that the depositions were taken pursuant to the usual and customary waiver of service of notice and issuance of commission with the reservation of the right to object to any question or answer, we believe we may assume the reservation pertained only to the preservation of objections and grounds for suppression arising out of appellant's challenge of appellee's capacity to bring this suit. Accordingly, we shall consider the first 7 points together.

Appellee's right or capacity to bring a suit of this nature has been decided adversely to appellant's contention by our Supreme Court in Hexter Title & Abstract

Co, Inc., v. Grievance Committee, Fifth Congressional Dist., State Bar of Texas, 142 Tex. 506, 179 S.W.2d 946, 948, 157 A. L.R. 268. The title company's brief in that case, as shown in the A.L.R. citation just given, among many other attacks, urged that the attorney general had the exclusive power under the Constitution to bring such suit, the identical point urged by appellant herein. After recognizing the contention made to the effect that The Grievance Committee of the State Bar had no authority to maintain the suit and after reviewing the provisions of the State Bar Act, Article 320a–1, Vernon's Tex.Civ.St., the Supreme Court said:

"It will be noted that one of the purposes of the above act was to subject all members of the Bar to the provisions of the act, and another purpose was to prohibit those not members of the State Bar from practicing law. The State Bar was created as an administrative agency of the judicial department to carry out these purposes, and was given the right to sue and 'such other powers as are reasonably necessary to carry out the purposes of this Act.' In other words, the State Bar Act prohibited persons not members of the State Bar from practicing law, and conferred upon the State Bar all the powers reasonably necessary to effectuate that purpose. The act at least impliedly made it the duty of the State Bar to enforce the provisions thereof which prohibited non-members from practicing law. *It therefore had an interest in the subject of the suit peculiar to itself, such as would authorize it to maintain a suit for the enforcement of the provisions of the act.* (Emphasis added.)

"The act clearly conferred upon the State Bar all powers reasonably necessary to prohibit those not members of the State Bar from practicing law. This would imply the power to sue out an injunction where such was reasonably necessary to accomplish this purpose."

We find no authority indicating the Supreme Court of Texas has altered its position in any degree on the question here under consideration. Accordingly, we hold that the Unauthorized Practice of Law Committee of the State Bar of Texas was within its authority in bringing its action and taking the depositions sought to be suppressed. Distinguishing cases cited and relied on by appellant or citing and quoting from other authority could serve no useful purpose. The Hexter case is simply decisive of the point.

■ From our view of the case the challenge of the action of the trial court in granting a summary judgment from the record made presents an entirely different situation with respect to the action of the lower court. The two leading Supreme Court cases on the right of the State Bar of Texas through its proper committees, to enjoin corporate abstract companies from practicing law are the Hexter case above cited and San Antonio Bar Association v. Guardian Abstract & Title Company, Tex., 291 S.W.2d 697, 702. In neither of those cases did the trial court find the companies to be so practicing as a matter of law. In the former the case was presented upon an agreed statement of facts. In the latter the case was tried to the court upon its merits. In the Guardian case the attorney's fees were collected by the corporation and the amounts thereof credited to the McQuowns (principal owners of the company and who constituted the law firm of McQuown & McQuown) by the corporation, which at the end of each month paid such attorneys an amount corresponding to the credits for legal work accumulated during the month. In that case the legal work was handled in mass production style by several so-called "scriveners," using legal forms prepared by the lawyers, working largely in the corporations' office and as much under control of superior lay employees of the corporation as under that of the lawyers. With their efforts and those of the transaction "closers," who were also lay employees of the corporation and who directed them as to the papers to be prepared, complete transactions were frequently closed without the lawyers seeing the papers or their third-party clients and such operation went on even when the lawyers were out of the city for an extended period. Also in that case the McQuowns were general counsel for the abstract and title corporation. No such facts are present in our case.

As part of the record in the case at bar the trial court had for consideration the affidavit of William S. Harris, the only lawyer owning any stock in appellant corporation. That affidavit swore Mr. Harris was not the attorney or general counsel for appellant and that even though he owned 299 of the 365 outstanding shares of stock of the company he was not the alter ego of said company. He further swore that in all instances where he had represented either the buyers, sellers or lenders it was at their special requests to him as an attorney; that when he did so he disclosed to his clients his relationship with the abstract and title company and that he represented his clients and not the company; that none of his legal work was "channeled" to him through the company and in fact the employees were specifically instructed not to do so; that the abstract plant and his law business were conducted as completely separate institutions, each maintaining its own books of account completely separate and apart, that none of his law business is attributable to the advertising of the company; that he typed his own legal instruments; that none of his legal fees ever went to the corporation and no officer, agent, or employee of the company has performed any of those acts constituting the practice of law.

Appellee, by brief, contends that "a more thoroughly combined, joint, merged and intermingled system of operation of a corporate business and law practice than that involved in this case cannot be conceived." To such assertion we cannot give assent. Both the Hexter case and the

Guardian case showed a more intermingled system of operation of an abstract business and a law office than does our case. If we take as true the affidavit of Mr. Harris, which we are required to do for the purpose of considering this summary judgment, the Guardian case did not show anything like as strong an intermingled system of operation of a corporate business and a law office as did the Hexter case, but even in the Guardian case the fees were collected by the corporation and remitted to the attorneys at the end of each month. Further, the attorneys owning the controlling interest in the corporation in the Guardian case were general counsel for the company. The affidavit of Mr. Harris denies that either of such situations exist between appellant and himself. The Supreme Court in the Guardian case said:

> "What constitutes the practice of law by a corporation, which is intimately affiliated with lawyers but of which the actual primary activity is selling abstracts and title insurance, is necessarily a rather vague and complicated question, which will depend largely on the various facts of the particular case, taken together.
>
> \*   \*   \*   \*   \*   \*
>
> "Conceivably, too, there might arise particular instances where these lawyer respondents, even with their present ownership and control of the corporation, may be able to handle legal transactions of the kind here in question without being or becoming agents; but again that would depend on the circumstances."

Thus, the Supreme Court has recognized in the Guardian case that even where the principal ownership and control of the corporation is in lawyers they may be able to handle legal transactions without being or becoming agents of the corporation. Mr. Harris has, in effect, sworn by his affidavit that he did so, the means by which he did so constituting fact questions. For example, Mr. Harris' affidavit shows in ef-

fect that all the law business that came to him was spontaneous, without any connection with the abstract company. To contradict such a statement of fact would require proof by the buyers, lenders or sellers, or someone with knowledge that showed otherwise. A fact issue would thus be created.

In considering this case we must keep in mind the rules that have been announced in summary judgment cases to the effect that:

■ Summary judgment practice is to be exercised with great caution giving litigants protection of their right to trial when there is the slightest doubt as to facts, since prompt despatch of judicial business is neither the sole nor primary purpose for which courts were established. Penn v. Garabed Gulbenkian, Tex.Civ. App., 243 S.W.2d 220.

■ " 'All doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for a summary judgment.' " Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929, 931.

■ " 'In determining a motion thus depending upon extrinsic evidence, the court's task is analogous to that which he performs on a motion for directed verdict. He accepts as true all evidence of the party opposing the motion which tends to support such party's contention, and gives him the benefit of every reasonable inference which properly can be drawn in favor of his position.' " Id.

■ "The general rule is that if a motion involves the credibility of affiants or deponents, or the weight of the showings or, it is said, a mere ground of inference, the motion will not be granted." Id.

■ "Pleadings, affidavits and other instruments will be construed liberally in favor of the party against whom summary judgment is sought." Webster v. Webster, Tex.Civ.App., 293 S.W.2d 820, 824.

"It may well be that the ultimate facts in the case will be inferred from uncontroverted facts; and, if so, the inferences themselves are facts, and they are 'controverted' if reasonable minds could draw different inferences. Drawing these inferences is ordinarily the province of the trier of the facts; and summary judgment will not lie in such a situation unless the facts compel, to the exclusion of all others, the inferences which support the summary judgment." Bliss v. City of Fort Worth, Tex.Civ.App., 288 S.W.2d 558, 563.

Accordingly, it is our holding that, explicit in appellant's defensive matters shown by the record, are fact issues rendering premature any final disposition thereof in this summary proceedings. The judgment of the court below is reversed and remanded.