Revised March 8, 2002

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No. 00-11025

---

NATIONWIDE MUTUAL INSURANCE COMPANY,

Plaintiff-Appellant,

VERSUS

UNAUTHORIZED PRACTICE OF LAW COMMITTEE,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Northern District of Texas

---

February 20, 2002

Before GARWOOD, DeMOSS, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

Nationwide Mutual Insurance Company ("Nationwide") sued Texas's Unauthorized Practice of Law Committee (the "UPLC") in federal district court. Nationwide sought a declaration that Texas law does not prohibit it from employing salaried staff attorneys to represent its insureds in policy-related cases. Nationwide also sought a declaration that the Texas State Bar Act, as interpreted

1

by the UPLC, violates the federal constitution.  Because it found the State Bar Act's unauthorized practice of law provisions to be sufficiently unclear, the district court abstained from exercising its jurisdiction under the <u>Pullman</u>[1] doctrine.  Nationwide has appealed and requests that we certify the state law issue to the Supreme Court of Texas.  We affirm the district court's abstention ruling but remand with instructions to dismiss without prejudice. We also deny Nationwide's motion to certify a question to the Supreme Court of Texas.

## I.  Facts and Procedural History

Nationwide employs staff attorneys to represent its insureds in policy-related lawsuits.  Like traditional outside counsel, Nationwide's staff counsel are duly licensed attorneys who conduct discovery, draft and file court documents, and physically appear in court.  The key difference is that staff counsel are salaried employees of Nationwide; they are not independent attorneys paid on a per case basis.

Before filing this lawsuit, Nationwide learned that the UPLC had sued Allstate Insurance Company in a Texas state court, alleging that Allstate's employment of staff attorneys constitutes the unauthorized practice of law by a corporation.[2]  Other

_____

[1] <u>Railroad Comm'n v. Pullman Co.</u>, 312 U.S. 496, 501-02 (1941).

[2] <u>See</u> <u>Unauthorized Practice of Law Comm. v. Collins</u>, No. 98-8269 (298th Dist. Ct., Dallas County, Tex.) (the "Allstate Litigation").

2

insurance companies have intervened in the Allstate litigation. Nationwide, however, chose not to intervene. Once it learned that the UPLC was investigating its use of staff attorneys, Nationwide filed this declaratory judgment action in federal court.

In its complaint, Nationwide seeks a declaration that there is no disciplinary rule, ethical opinion, or caselaw in Texas prohibiting an insurance company from using staff attorneys to defend its insureds. Nationwide also seeks a declaration that the unauthorized-practice-of-law section of the Texas State Bar Act, as interpreted by the UPLC, violates the federal Constitution. Specifically, Nationwide alleges that the section (1) violates due process because it bears no rational relationship to the objective of ensuring quality, ethical representation; (2) violates due process because it is unconstitutionally vague; (3) violates the First Amendment; (4) impairs Nationwide's contractual obligations to its insureds in violation of Article I, § 10 of the Constitution; and (5) is therefore actionable under 42 U.S.C. § 1983.

The UPLC moved to dismiss Nationwide's suit under Rules 12(b)(1), (2), and (6) of the Federal Rules of Civil Procedure. The UPLC offered several reasons for dismissal, including (1) that there is no constitutional right to practice law, (2) that the suit should be dismissed under the Younger[3] abstention doctrine due to

_____

[3] Younger v. Harris, 401 U.S. 37 (1971).

the pending Allstate litigation, and (3) that Texas law prohibits a corporation, other than a "professional corporation," from practicing law.

The district court granted the UPLC's motion to dismiss after hearing arguments from both sides. Rather than invoking the Younger doctrine, however, the district court dismissed the suit under the Pullman doctrine so that the state courts could resolve whether Texas law actually prohibits an insurer from employing staff attorneys on behalf of its insureds. The court noted that the resolution of this state law issue could make it unnecessary to determine whether the State Bar Act violates the federal Constitution. Finally, the court reminded Nationwide of its opportunity to intervene in the Allstate litigation. Nationwide appeals the district court's dismissal and moves this court to certify the state law question to the Supreme Court of Texas.

## II.  Discussion

### A.  Standard of Review

The parties disagree on the proper standard of review for this case. Nationwide argues that we review abstention decisions de novo, while the UPLC insists that we review abstention decisions only for abuse of discretion. There is some truth to each of these propositions. Despite the confusion that once existed in this

Circuit,[4] it is now clear that we apply a two-tiered standard of review in abstention cases. Although we review a district court's abstention ruling for abuse of discretion, we review de novo whether the requirements of a particular abstention doctrine are satisfied.[5] We recently articulated this two-tiered standard of review in <u>Webb v. B.C. Rogers Poultry, Inc.</u>:

> We review an abstention for abuse of discretion. The exercise of discretion must fit within the narrow and specific limits prescribed by the particular abstention doctrine involved. A court necessarily abuses its discretion when it abstains outside of the doctrine's strictures.[6]

Thus, we review the district court's decision to abstain for abuse of discretion, provided that the elements of <u>Pullman</u> abstention are present.

## B. <u>Pullman</u> Abstention

The Supreme Court explained in <u>Hawaii Housing Authority v. Midkiff</u> that under the <u>Pullman</u> doctrine, a federal court should

---

[4] <u>See</u> <u>Brooks v. Walker County Hosp. Dist.</u>, 688 F.2d 334, 336 n.4 (5th Cir. 1982) (discussing an apparent inconsistency in the standard of review in Fifth Circuit abstention cases).

[5] <u>See, e.g.</u>, <u>Webb v. B.C. Rogers Poultry, Inc.</u>, 174 F.3d 697, 701 (5th Cir. 1999); <u>Lipscomb v. Columbus Mun. Separate Sch. Dist.</u>, 145 F.3d 238, 242 (5th Cir. 1998); <u>Munich Amer. Reinsurance Co. v. Crawford</u>, 141 F.3d 585, 589 (5th Cir. 1998); <u>Sierra Club v. City of San Antonio</u>, 112 F.3d 789, 793 (5th Cir. 1997); <u>Clark v. Fitzgibbons</u>, 105 F.3d 1049, 1051 (1997); <u>Alexander v. Ieyoub</u>, 52 F.3d 554, 557 (5th Cir. 1995); <u>Louisiana Debating & Literary Ass'n v. City of New Orleans</u>, 42 F.3d 1483, 1489 (5th Cir. 1995); <u>Wilson v. Valley Elec. Membership Corp.</u>, 8 F.3d 311, 313 (5th Cir. 1993).

[6] 174 F.3d 697, 701 (5th Cir. 1999) (internal citations and quotation omitted).

abstain from exercising its jurisdiction "when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided."[7] "By abstaining in such cases, federal courts will avoid both unnecessary adjudication of federal questions and 'needless friction with state policies . . . .'"[8]  In other words, for Pullman abstention to be appropriate in this case, it must involve (1) a federal constitutional challenge to  state action and (2) an unclear issue of state law that, if resolved, would make it unnecessary for us to rule on the federal constitutional question.

The first prong is clearly satisfied.  The UPLC is a state agency,[9] and any attempt by it to prohibit Nationwide from employing staff attorneys would be state action.[10]  Nationwide has raised several arguments under which the UPLC's reading of the State Bar Act would violate Nationwide's constitutional rights. Although we express no opinion on whether Nationwide's

---

[7] 467 U.S. 229, 236 (1984) (quoting Pullman, 312 U.S. at 500); accord City of Houston v. Hill, 482 U.S. 451, 476 (1987) (Scalia, J., concurring); Lipscomb, 145 F.3d at 242; Louisiana Debating & Literary Ass'n, 42 F.3d at 1491; see also 17A Charles Alan Wright et al., Federal Practice and Procedure § 4242, at 30 (2d ed. 1988).

[8] Midkiff, 467 U.S. at 236.

[9] Green v. State Bar of Texas, 27 F.3d 1083, 1087-88 (5th Cir. 1994) (noting that "[t]he UPLC is a state agency"); see also Tex. Gov't Code Ann. §§ 81.103 – 81.104 (Vernon 1998) (empowering the Supreme Court of Texas to appoint the nine committee members of the UPLC to police against the unauthorized practice of law in Texas).

[10] See Green, 27 F.3d at 1087-88.

constitutional arguments will ultimately prevail, they appear to at least deserve consideration.  The UPLC has not demonstrated that all of Nationwide's claims clearly mandate dismissal.

To satisfy the second prong, there must be an uncertain issue of state law that is "fairly susceptible" to an interpretation that would render it unnecessary for us to decide the federal constitutional questions in a case.[11]  Thus, for abstention to be proper in this case, the State Bar Act must be fairly susceptible to an interpretation that would permit Nationwide to employ salaried attorneys to represent its insureds in coverage-related cases.  We believe that it is.

Subchapter G of the State Bar Act, published in the Texas Government Code §§ 81.101 – 81.106 (Vernon 1998), regulates the practice of law in Texas.  Nothing in the Act itself expressly forbids insurance companies from employing staff counsel to represent its insureds.  Section 81.101(a) provides a nonexhaustive list of activities constituting the "practice of law," including drafting and filing court documents, appearing before a judge, and giving legal advice out of court.  But the Act does not define the "unauthorized practice of law"; § 81.102(a) merely states that "a person may not practice law in this state unless the person is a

---

[11] Baran v. Port of Beaumont Navigation Dist., 57 F.3d 436, 442 (5th Cir. 1995) (citing Harman v. Forssenius, 380 U.S. 528, 534-35 (1965)); accord Hill, 482 U.S. at 468; Louisiana Debating & Literary Ass'n, 42 F.3d at 1492; Word of Faith World Outreach Ctr. Church, Inc. v. Morales, 986 F.2d 962, 967 (5th Cir. 1993).

member of the state bar."[12]  Nationwide's staff attorneys are duly licensed members of the state bar, just like attorneys in private practice.  Furthermore, the word "person," as used in § 81.102(a), presumptively includes corporations.  The Texas Code of Construction Act, which applies to the State Bar Act,[13] instructs courts to read the word "person" as including corporations, partnerships, and other legal entities.[14]

Moreover, we find no Texas cases that address whether § 81.102(a) prohibits an insurance company from employing staff attorneys to defend its insureds.  The UPLC argues that the Supreme Court of Texas definitively held in <u>Hexter Title & Abstract Co. v. Grievance Committee</u>[15] that corporations may never employ attorneys

---

[12] Chapter 83 of the Texas Government Code provides an additional nonexhaustive list of activities qualifying as the unauthorized practice of law.  <u>See</u> Tex. Gov't Code Ann. §§ 83.001–83.006 (Vernon 1998) (prohibiting the drafting of conveyances, deeds, notes, and mortgages by persons who are not licensed attorneys or real estate brokers).  None of those activities, however, is relevant to this case.  Section 38.123 of the Texas Penal Code criminalizes certain unauthorized practices of law, but it does not clarify the question of whether an insurance company may employ staff attorneys to represent its insureds.

[13] Tex. Gov't Code Ann. § 1.002 (Vernon 1988) ("The Code Construction Act (Chapter 311 of this code) applies to the construction of each provision in this code, except as otherwise expressly provided by this code.").

[14] <u>Id.</u> § 311.005(2) (stating that unless the statute in which the word is used requires a different meaning, "'Person' includes corporation, organization, government or governmental subdivision or agency, business trust, estate, trust, partnership, association, and any other legal entity").

[15] 179 S.W.2d 946 (Tex. 1944).

to represent third parties; we disagree.  First, the court based its ruling in <u>Hexter Title</u> on a now repealed Texas penal statute[16] that expressly forbade corporations from practicing law on behalf of third persons; the court did not examine or apply § 81.102(a).[17] Second, <u>Hexter Title</u> is factually distinguishable from the present case.  <u>Hexter Title</u> involved a title company, "incorporated for the purpose of making abstracts of title to land and liens thereon," that employed lawyers to draft conveyances and other legal documents for its clients.[18]  The court held that the "preparation of the conveyances and other instruments covered by the injunction in nowise relates to [the business of making titles]."[19]  Since Hexter Title had no present interest in the legal documents that it was drafting, it could not perform that service.  On the contrary, Nationwide, as an insurer, has a direct financial interest in policy-related cases involving its insureds.  Thus, under the court's reasoning in <u>Hexter Title</u>, there might be reason to treat insurance companies differently from title companies with respect

---

[16] Unauthorized Practice Act, 43d Leg., R.S., ch. 238, 1933 Tex. Gen. Laws 835, 835- 38, <u>repealed by</u> Act of June 1, 1949, ch. 301, § 1, 1949 Tex. Gen. Laws 548.

[17] <u>Hexter Title</u>, 179 S.W.2d at 951; <u>see also</u> <u>J. R. Phillips Inv. Co. v. Road Dist. No. 18</u>, 172 S.W.2d 707, 712 (Tex. Civ. App.–Waco 1943, writ ref'd) (citing the same penal statute for the proposition that it is unlawful for corporations to practice law).

[18] <u>Id.</u> at 952.

[19] <u>Id.</u>

to the employment of duly licensed staff counsel.[20]

In <u>Scruggs v. Houston Legal Foundation</u>,[21] a Texas appellate court applied a more liberal approach toward allowing corporations to employ licensed attorneys to represent third parties. <u>Scruggs</u> held that a charitable, nonprofit corporation could employ attorneys to represent indigents accused of committing crimes.[22] The court focused on the fact that the Legal Foundation did not attempt to control or exploit the manner in which the attorneys in its employ represent their indigent clients. Because the Foundation's practices were not demeaning to the profession, there was not proof that it was engaged in the unauthorized practice of

---

[20] <u>Id.</u> There is abundant caselaw in Texas regulating title companies' attempts to draft legal documents for third parties. At least three other Texas appellate court decisions have characterized this practice as the unauthorized practice of law. <u>See</u> <u>San Antonio Bar Ass'n v. Guardian Abstract & Title Co.</u>, 291 S.W.2d 697, 701 (Tex. 1956); <u>Amarillo Abstract & Title Co. v. Unauthorized Practice of Law Comm.</u>, 332 S.W.2d 349, 350-51 (Tex. Civ. App.–Amarillo 1960, writ ref'd n.r.e.) (holding that there was a fact question regarding whether the title company was engaged in the practice of law);<u>Stewart Abstract Co. v. Judicial Comm'n</u>, 131 S.W.2d 686, 690 (Tex. Civ. App.–Beaumont 1939, no writ). There now exists a statute which specifically prohibits title companies from drafting legal documents for third parties. <u>See</u> Tex. Gov't Code Ann. § 83.001. The Texas judiciary and legislature have not, however, addressed the issue of insurance companies employing staff attorneys to represent their insureds. Because of differences between a title company's interest in drafting a conveyance for a third party and an insurer's interest in a case involving one of its insureds' policies, we do not believe that those cases necessarily control the present issue.

[21] 475 S.W.2d 604 (Tex. Civ. App.–Houston [1st Dist.] 1972, writ ref'd).

[22] <u>Id.</u> at 607.

law simply because it employed lawyers to represent third parties.[23] Although the Texas legislature has since enacted legislation prohibiting non-profit legal service corporations from employing staff counsel to represent third parties,[24] the Scruggs opinion demonstrates a willingness by Texas courts to allow certain corporate staff counsel arrangements, rather than a predisposition to outlaw the practice entirely.

Finally, it is unclear what effect Texas's ultra vires statute has on an insurer's right to employ staff attorneys. Article 2.01 of the Texas Business Corporation Act provides that corporations may not organize for the purpose of transacting business that "cannot lawfully be engaged in without first obtaining a license . . . to engage in such activity" if "a license cannot lawfully be granted to a corporation."[25] While the statute may suggest that Nationwide's staff attorneys cannot practice law unless Nationwide itself can obtain a bar license, no Texas court has interpreted this statute to prohibit insurance companies from employing staff counsel. And as stated above, it is unclear whether § 81.02(a) of the State Bar Act prohibits insurance companies from "practicing law" by employing duly licenced attorneys, because the word "person" as used in the statute includes corporations.

---

[23] Id. at 606-07.

[24] See Tex. Ins. Code Ann. art. 23.12 (Vernon 1981).

[25] Tex. Bus. Corp. Act Ann. art. 2.01, § B(2) (Vernon 1980).

In light of these conflicting authorities and in the absence of caselaw interpreting § 81.102(a) in this context, we believe that the law is fairly susceptible to a reading that would permit Nationwide to employ staff counsel on behalf of its insureds. While the Texas courts certainly may decide that Nationwide's staff attorneys are engaged in the unauthorized practice of law, we believe that the law is uncertain enough on this issue that we should abstain from ruling on its federal constitutionality. Thus, given that the strictures of the <u>Pullman</u> doctrine were satisfied and in light of Texas's interest in policing its state bar, the district court did not abuse its discretion in applying <u>Pullman</u> abstention to this case.

## C. Dismissal

Although the district court did not err in applying <u>Pullman</u> abstention, it did err in dismissing Nationwide's claims with prejudice.[26] Ordinarily, a district court ordering <u>Pullman</u> abstention should "retain jurisdiction but . . . stay the federal suit pending determination of the state-law questions in state court."[27] The Supreme Court, however, has recognized a limited

---

[26] The district judge technically did not specify whether he was dismissing the case with or without prejudice, however, "a dismissal is presumed to be with prejudice unless the order explicitly states otherwise." <u>Fernandez-Montes v. Allied Pilots Ass'n</u>, 987 F.2d 278, 284 n.8 (5th Cir. 1993). Furthermore, the UPLC's motion, which the district court granted, requested that Nationwide's claims be dismissed with prejudice.

[27] <u>Harris County Comm'rs Court v. Moore</u>, 420 U.S. 77, 88 n.14 (1975).

12

exception to this rule for cases from Texas, whereby the district court dismisses the case <u>without prejudice</u> rather than retaining jurisdiction.[28]  Federal courts created this exception because the Texas Supreme Court held in <u>United Services Life Insurance Co. v. Delaney</u>[29] that it cannot grant declaratory relief if a federal court retains jurisdiction over the case.[30]  According to the Supreme Court of Texas, such a ruling would be an advisory opinion.[31]  But as the Supreme Court noted in <u>Harris County Commissioners Court v. Moore</u>, our practice of dismissing <u>Pullman</u> abstention cases from Texas is not designed to foreclose recovery permanently:

> We have adopted the unusual course of dismissing in this case solely in order to avoid the possibility that some state-law remedies might otherwise be foreclosed to appellees on their return to state court. <u>Obviously, the dismissal must not be used as a means to defeat the appellees' federal claims if and when they return to federal court</u>.[32]

The district court therefore erred in dismissing Nationwide's claims with prejudice.  On remand, the district court should dismiss this case without prejudice so as to preserve Nationwide's state and federal claims.

## D.  Certification to the Supreme Court of Texas

---

[28] <u>Id.</u> at 88 n.14, 88–89.

[29] 396 S.W.2d 855 (Tex. 1965).

[30] <u>Moore</u>, 420 U.S. at 88 n.14; <u>Barrett v. Atl. Richfield Co.</u>, 444 F.2d 38, 46 (5th Cir. 1971); <u>see also</u> 17A Wright, § 4243, at 66.

[31] <u>Delaney</u>, 396 S.W.2d at 863–64.

[32] <u>Moore</u>, 420 U.S. at 88 n.14 (emphasis added).

13

In addition to appealing the district court's abstention ruling, Nationwide has filed a motion with this court to certify the following question to the Supreme Court of Texas: "Whether, under Texas state law, the State Bar Act prohibits an insurance company from employing duly licensed staff legal counsel to represent the interests of its insureds when the insurance company has a contractual duty to defend and indemnify the insured?" Under Rule 58 of the Texas Rules of Appellate Procedure, "[t]he Supreme Court of Texas may answer questions of law certified to it by any federal appellate court if the certifying court is presented with determinative questions of Texas law having no controlling Supreme Court precedent."

The decision to certify a question of state law lies within the sound discretion of this court.[33] While we acknowledge the efficiencies generated by certification,[34] we decline the invitation to certify the question in this instance. The UPLC and several insurance companies are currently litigating this state law question in two Texas district courts. We believe that the Supreme Court of Texas would be better suited to answer this question with

---

[33] Lehman Bros. v. Schein, 416 U.S. 386, 391 (1974).

[34] See, e.g., Arizonans for Official English v. Arizona, 520 U.S. 43, 76 (1997) ("Certification procedure . . . allows a federal court faced with a novel state-law question to put the question directly to the State's highest court, reducing the delay, cutting the cost, and increasing the assurance of gaining an authoritative response."); Schein, 416 U.S. at 391 (stating that certification "does, of course, in the long run save time, energy, and resources and helps build a cooperative judicial federalism").

the benefit of records generated in state court by several insurance companies than it would be by receiving a certified question from one insurer with a relatively limited record on appeal. We therefore deny Nationwide's motion to certify its question to the Supreme Court of Texas.

## III. Conclusion

The district court did not abuse its discretion in applying Pullman abstention in this case. We believe that the Texas State Bar Act is fairly susceptible to a reading that would make it unnecessary for us to rule on the federal constitutionality of its unauthorized practice of law provisions. The district court erred, however, when it dismissed Nationwide's claims with prejudice. We therefore AFFIRM the district court's application of the Pullman doctrine, but REVERSE its decision to dismiss Nationwide's claims with prejudice. The district court's order of dismissal is VACATED, and the case is REMANDED with instructions to dismiss Nationwide's claims without prejudice. Finally, Nationwide's certification motion is DENIED.