**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 02-20612
Summary Calendar

AMERICAN MOTORISTS INSURANCE COMPANY,
an Illinois Insurance Company,

Plaintiff-Appellee,

versus

CELLSTAR CORPORATION,
a Delaware Corporation,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas
(H-01-CV-2285)

January 28, 2003

Before JONES, STEWART, and DENNIS, Circuit Judges.

PER CURIAM:[*]

American Motorist Insurance Company ("AMICO") filed suit in district court against Cellstar

Corporation ("Cellstar") for failure to pay additional insurance premiums. CellStar filed a motion to

dismiss arguing improper venue and abstention. The district court denied Cellstar's motion to dismiss

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

and the parties filed cross-motions for summary judgment. The district court awarded AMICO $192,213, denied Cellstar's motion for summary judgment, and ordered Cellstar to pay AMICO $17,250 in attorney's fees. Cellstar appeals. For the reasons cited below, we affirm the district court's judgments.

DISCUSSION

I. Motion to Dismiss

This Court reviews a district court's venue decision for abuse of discretion. United States v. Lipscomb, 299 F.3d 303, 338-39 (5th Cir. 2002). "[W]e review a district court's abstention ruling for abuse of discretion, we review de novo whether the requirements of a particular abstention doctrine are satisfied." Nationwide Mut. Ins. Co. v. Unauthorized Practice of Law Comm., 283 F.3d 650, 652 (5th Cir. 2002).

AMICO filed suit against Cellstar in district court claiming that Cellstar owed it additional premiums under a one-year global transportation insurance policy (the "Policy"). AMICO argues that venue was proper in the Southern District of Texas because a "substantial part of the events or omissions giving rise to the claim" occurred in Houston. 28 U.S.C. § 1391(a)(2). Specifically, AMICO points out that Cellstar's Houston insurance broker, Henley, Williams & Associates ("HWA"), procured the coverage from AMICO. AMICO asserts that much of the negotiations concerning the Policy took place between HWA and AMICO's Houston office and that the endorsements to the Policy, of particular importance in this case, were transmitted to Cellstar through HWA in Houston. Cellstar argues that promulgating the Policy to Cellstar in Dallas through a Houston insurance broker "was an event without which the present suit would not exist, [but] that event does not constitute a 'substantial part' of the events giving rise to [AMICO's] claim." Consol.

2

Ins. Co. v. Vanderwoude, 876 F. Supp. 198, 200-02 (N.D. Ind. 1995). Because significant events relating to the formation and execution of the Policy occurred in Houston, we are not persuaded that the district court abused its discretion by denying Cellstar's motion to dismiss for improper venue.

The parties to this case are also involved in litigation concerning coverage for claims under the Policy in Dallas state court. Cellstar argues that the district court erred by failing to dismiss the instant case in favor of the state court action. Cellstar contends that AMICO should have brought the instant action (a claim for payment of additional premiums due at the end of the coverage period) as a compulsory counterclaim to Cellstar's state court action (a claim for coverage under the Policy). AMICO argues that the instant action is not a compulsory counterclaim to the state court action because it did not arise out of "the same transaction or occurrence that is the subject matter of the opposing party's claim." Ingersoll-Rand Co. v. Valero Energy Corp., 997 S.W.2d 203, 207 (Tex. 1999) (stating the six elements for a compulsory counterclaim under Texas law).

AMICO contends that while both cases involve the same Policy, the similarities end there. Cellstar argues that the validity of the Policy's Endorsement No. 1 is at issue in both cases. A review of the record indicates that the validity of the Warranty section of Endorsement No. 1 is at issue in the Dallas state court action, while the sections involving Reporting and Premium Adjustment and the Country Schedule are at issue in the instant suit. After careful consideration, we are satisfied that the district court did not abuse its discretion by denying Cellstar's motion to dismiss in favor of the Dallas state court action.[1]

---

[1] Cellstar further argues that the trial court's failure to provide any explanation for denying Cellstar's motion to dismiss constitutes reversible error. Cellstar contends that because the district court styled its judgment as an "Interlocutory Declaratory Judgment" the district court may have erred by applying the Colorado River abstention doctrine to a declaratory judgment action. See Black Sea Inv., Ltd. v. United Heritage Corp., 204 F.3d 647, 650 (5th Cir. 2000) (outlining the factors to

II.    Summary Judgment

We review the grant of summary judgment de novo.  Mowbray v. Cameron County, Tex., 274 F.3d 269, 278 (5th Cir. 2001).  Summary judgment is appropriate only when the record indicates "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56.  "Questions of fact are reviewed in the light most favorable to the nonmovant and questions of law are reviewed de novo."  Mowbray, 274 F.3d at 278-79.

Under the Policy, Cellstar must pay a deposit premium at the beginning of the coverage period.  At the end of the coverage period, the actual premium owed is calculated based on Cellstar's actual sales in each country, and the country-specific rates set forth in the Policy's Endorsement No. 1.  The Policy further sets forth minimum premiums, i.e. the smallest amount of money Cellstar must pay for the insurance, regardless of its sales volumes.  In this case, the minimum premiums were set at the same level as the deposit premiums.

AMICO argues that the Policy sets forth a minimum premium and a deposit premium for each country on a country-by-country basis.  Cellstar argues that the Policy does not require it to pay a minimum premium for each country, rather it requires payment of an aggregate minimum premium.  Cellstar points to the minimum premium of $894,747 listed on the Declarations page and notes that the Policy does not include the accompanying language - "for each country-based sales operation" with each reference to a "minimum premium."

_____

be considered in determining whether abstention is appropriate).  Cellstar's argument is unpersuasive. Regardless of how the district court styled its judgment, it is clear from the record that this is a simple breach of contract action, not a declaratory judgment action.  Thus, Cellstar's concerns regarding the applicability of the Colorado River doctrine are unavailing.

4

Cellstar further argues that AMICO's premium calculations are based entirely on language contained in Endorsement No. 1, which Cellstar contends is invalid. Cellstar asserts that it did not receive Endorsement No. 1 until eight months into the coverage period and that it did not sign the Endorsement. This argument fails because Cellstar concedes that it has "accepted the main policy by bringing suit on it," referring to the Dallas state court action. The Policy consists of, in part, a Declarations page which incorporates the Endorsements. The Declarations page, like Endorsement No. 1, contains a signature requirement, yet it was also not signed. The Declarations page further incorporates the "Country Schedule Attached" which is found in Endorsement No. 1. The Country Schedule lists the various countries in which Cellstar conducted business for which coverage was provided under the Policy, and the applicable rate used in calculating the premium for each country. The Country Schedule provides that "[t]he Deposit and Minimum Premium for each country-based sales operation is shown to the right of the applicable rate for that country.

Under Texas law:

> [N]ot every difference in the interpretation of a contract or an insurance policy amounts to an ambiguity. Both the insured and the insurer are likely to take conflicting views of coverage, but neither conflicting expectations nor disputation is sufficient to <u>create</u> an ambiguity.

Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 134 (Tex. 1994) (emphasis in original). In determining whether the Policy is ambiguous, we must consider the Policy as a whole, giving effect to all of its terms. As the Texas courts have explained, when construing an insurance contract, courts must

> [R]ead all parts of a contract together. Indeed, courts must be particularly wary of isolating from its surroundings or considering apart from other provisions a single phrase, sentence, or section of a contract.

5

State Farm Life Ins. Co. v. Beaston, 907 S.W.2d 430, 433 (Tex. 1995) (citations omitted). We must reject Cellstar's interpretation because it would require this Court to do just that.

The district court concluded that "[t]he total minimum premium listed in the contract's declarations does not convert the country-specific minimum into an aggregate minimum." We agree. It is clear from the Country Schedule that each country was designated a minimum premium. Moreover, it is also apparent that these country-based minimums were used in calculating the total minimum premium of $894,747 listed on the declarations page. As the district court explained, "[b]ecause the contract says what it says [AMICO] will recover the premiums it claims."

III.    Attorney's Fees

This Court reviews the district court's grant of attorney's fees for abuse of discretion. Coffel v. Stryker Corp., 284 F3d 625, 640 (5th Cir. 2002).

Cellstar contends that the district court erred by awarding AMICO a lump-sum of $17,250 in attorney's fees. Cellstar argues that (1) Texas law does not allow for the award of attorney's fees in cases seeking "reimbursement of funds advanced," (2) the district court erred by failing to articulate any basis for the award, and (3) the award should be reduced because AMICO failed to exercise "billing judgment." AMICO argues that the award was reasonable in light of the fact that AMICO prevailed in this simple breach of contract action.

"State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." Mathis v. Exxon Corp., 302 F.3d 448, 461 (5th Cir. 2002). Contrary to Cellstar's contention, this case involves a simple breach of an insurance contract for which Texas law allows an award of attorney's fees. See TEX. CIV. PRAC & REM. CODE ANN. § 38.001(8) (Vernon 1997); Barnett v. Aetna Life Ins. Co., 723 S.W.2d 663, 667 (Tex. 1987). Indeed, "[u]nder Texas

6

law, when a prevailing party in a breach of contract suit seeks fees, an award of reasonable fees is mandatory, as long as there is proof of reasonable fees, and the plaintiff has been awarded damages." Mathis, 302 F.3d at 462 (citations omitted). Under Texas law, there is a rebuttable presumption of reasonableness for fees that are "usual and customary." TEX. CIV. PRAC. & REM. CODE ANN. § 38.003 (Vernon 1997). The judge may also take judicial notice of the "usual and customary attorney's fees and of the contents of the case file." Id. at § 38.004.

In this case, AMICO requested $21,759 in attorney's fees. AMICO submitted affidavits in support of its request and Cellstar filed objections thereto. Under Texas law, AMICO's supporting affidavits, "combined with the presumption of reasonableness and the court's ability to use judicial notice to guide the reasonableness finding is enough for us to conclude that the district court did not abuse its discretion" in awarding $17,250 in attorney's fees. Mathis, 302 F.3d at 462.

CONCLUSION

For the reasons outlined above, we affirm the judgments of the district court.

AFFIRM.

7