# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 29, 2011

No. 10-20671

Lyle W. Cayce
Clerk

KENYON L. COLEMAN,

Plaintiff - Appellant

v.

E. J. GILLESPIE, Officer; UNKNOWN OFFICER 2; UNKNOWN SECURITY
COMPANY; CITY OF HOUSTON; UNKNOWN SECURITY GUARD OF THE
UNKNOWN SECURITY COMPANY,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:09-CV-1091

Before HIGGINBOTHAM, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:[*]

Kenyon Coleman appeals the judgment in favor of all defendants on his 42
U.S.C. § 1983 claim alleging he was arrested without probable cause.[1] We affirm
the judgment with one modification.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

[1] Read charitably, Coleman's complaint also encompassed a second 42 U.S.C. § 1983
claim alleging cruel and unusual jail conditions, as well as various state-law claims. Coleman
does not appeal the district court's denial of those claims.

No. 10-20671

I

The core of this case concerns two off-duty police officers employed as private security guards at an apartment complex. The officers, named in the complaint as "Unknown Security Guard" and "Unknown Officer 2," were later identified as Deputy Richard Goffner of the Harris County Sheriff's Office and Officer John Johnson of the Rosenberg Police Department. The officers' off-duty work at the apartment complex was approved by their respective employers, and they were authorized to wear their police uniforms and badges in their private security work.

Deputy Goffner and Officer Johnson were working the evening security shift at the apartment complex on March 29, 2007. According to the officers,[2] late that evening—"after midnight" according to Deputy Goffner, "around midnight" according to Officer Johnson—they heard loud music coming from a vehicle parked near the laundry room.[3] The officers questioned the driver of the vehicle, Coleman, about why he was at the apartment complex. Coleman said he was not a resident but was there visiting a friend or relative. Coleman refused to give the officers the name or apartment number of the person he was visiting. The officers then ordered Coleman to leave the apartment property.

"About an hour or two later," according to affidavits filed by the officers, they again heard loud music and found that Coleman had returned to the apartment complex. Officer Johnson immediately handcuffed Coleman and

---

[2] The police report for Coleman's arrest was written by another officer who did not have firsthand knowledge of these events. Deputy Goffner and Officer Johnson described the arrest three years later in affidavits filed with the district court. Both officers have sworn that these recollections are truthful and accurate.

[3] Officer Johnson claims he also smelled marijuana coming from the vehicle. Deputy Goffner makes no mention of this, nor was any evidence of marijuana use found when Coleman was searched, arrested, and booked by the police.

No. 10-20671

arrested him for trespassing. Deputy Goffner contacted the district attorney's office, where an assistant district attorney accepted charges for criminal trespass, and then called the Houston Police Department to have an officer transport Coleman to the Harris County jail. Officer E.J. Gillespie was dispatched to the apartment complex, met with the other officers, switched out Coleman's handcuffs, and then took him to a nearby police substation for booking.

Coleman tells a different story. In a sworn affidavit, Coleman avers he had only a single encounter with the officers: that he was getting out of his vehicle to visit a friend when Officer Johnson immediately handcuffed and searched him. Coleman's single-encounter story gains some support from police dispatch records showing that the officers called to report the arrest at 11:27 pm—on the early end of when the officers say they *first* encountered Coleman—and from an affidavit by Officer Gillespie stating that he arrived on the scene around 12:30 am. Police records show that Officer Gillespie was dispatched at 12:13 am and arrived at 12:16 am.

Coleman says that only after he was handcuffed and searched did the officers demand to know why he was at the apartment complex. He says the officers threatened to charge him with trespassing unless he told them his friend's name and apartment number and walked them to the door. Coleman refused to identify which resident he was visiting or to provide any information other than his name. Some time later, Officer Gillespie arrived and transported Coleman to the county jail.

II

A

The district court dismissed Coleman's claims against Deputy Goffner and Officer Johnson under Federal Rule of Civil Procedure 41(b) for want of

prosecution. Shortly after the complaint was filed, these officers moved to quash service of process under Rule 12(b)(5) because they had not been personally served.[4] The district court granted the motion and explained to Coleman that, as a plaintiff proceeding *in forma pauperis*, he was required to "request service upon the appropriate defendants and attempt to remedy any apparent service defects of which a plaintiff has knowledge."[5] The court further explained to Coleman that even though the identities of these officers were not yet known, he had a duty to promptly discover that information and ensure the officers were properly served. The court's order concluded by warning Coleman that "any defendant who is not properly served within the 120-day period will be dismissed without prejudice from this action."[6]

Shortly after the motion to quash was granted, the other defendants identified the unnamed officers as Deputy Goffner and Officer Johnson. Coleman was obliged to request service on the officers at that time, but apparently failed to do so. Nearly a year later, when the district court turned to the motion for summary judgment filed by the defendants before it, the court found that service had not been made on Deputy Goffner or Officer Johnson and dismissed the claims against them under Rule 41(b).

We affirm the dismissal of claims against these officers with one modification. Notwithstanding the district court's warning that unserved defendants would be dismissed without prejudice, the final judgment was silent in this regard and hence with prejudice.[7] Because these defendants were never

---

[4] *See* FED. R. CIV. P. 12(b)(5).

[5] *Rochon v. Dawson*, 828 F.2d 1107, 1110 (5th Cir. 1987) (discussing FED. R. CIV. P. 4(c)(3)); *accord Lindsey v. U.S. R.R. Retirement Bd.*, 101 F.3d 444, 446 (5th Cir. 1996).

[6] *See* FED. R. CIV. P. 4(m).

[7] *See, e.g.*, *Nationwide Mut. Ins. Co. v. Unauthorized Practice of Law Comm. of State Bar of Tex.*, 283 F.3d 650, 656 n.26 (5th Cir. 2002); *Fernandez-Montes v. Allied Pilots Ass'n*,

No. 10-20671

before the court, the dismissal should be without prejudice.[8]  We therefore modify the judgment to reflect dismissal without prejudice.

B

Coleman argues that, apart from the actions of Deputy Goffner and Officer Johnson, he was subject to a separate unconstitutional arrest by Officer Gillespie.  Ordinarily, however, transfer of an arrestee from the custody of one officer to another does not effect a separate arrest or seizure.  We have recognized only a very limited exception for cases where the second officer performs his own full investigation before independently deciding whether to take custody of the suspect.[9]  Even if that exception applied here, there would be no constitutional violation because Officer Gillespie had probable cause.  He spoke with two witnesses, Deputy Goffner and Officer Johnson, who told him they personally asked Coleman to leave the premises and that Coleman refused to do so.  This was sufficient to provide Officer Gillespie with probable cause.

C

The district court properly dismissed Coleman's claims against the City of Houston.  Section 1983 does not allow a municipality to be held vicariously liable for its officers' actions on a theory of *respondeat superior*.[10]  Municipal liability instead requires proof that an official policy or custom was the moving

---

987 F.2d 278, 284 n.8 (5th Cir. 1993) (collecting cases).

[8] Rule 4(m) instructs that failure to effect timely service shall result in dismissal without prejudice, and Rule 41(b) likewise indicates that a dismissal for failure to join a party does not operate as an adjudication on the merits.  *See* FED. R. CIV. P. 4(m), 41(b).

[9] *United States v. Walker*, 535 F.2d 896, 898–99 (5th Cir. 1976).

[10] *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658, 691–95 (1978).

force behind the constitutional violation.[11]  Coleman has not identified evidence meeting this standard.  He has not pointed to any official policy of the Houston Police Department.[12]  He alleges a history of constitutional violations so persistent and widespread that official policy may be inferred, but there is no evidence in the record of these supposed violations.  He argues that his allegedly improper arrest was caused by the City's failure to adequately train its officers,[13] but he has offered nothing to counter the City's evidence that it has a constitutionally adequate training program in place.  Accordingly, there is no basis for municipal liability.

For the foregoing reasons, the judgment is AFFIRMED AS MODIFIED to reflect that the dismissal of claims against Deputy Goffner and Officer Johnson is without prejudice.

---

[11] *Monell*, 436 U.S. at 694–95.  Coleman asserts in his pleadings that the Houston Police Department has a "culture" that leads to constitutional violations by its officers, but this is not a correct recitation of the legal standard.

[12] *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–84 (1986).

[13] *Cf. City of Canton v. Harris*, 489 U.S. 378 (1989); *see also Connick v. Thompson*, 131 S. Ct. 1350, 1359–64 (2011).