REVISED NOVEMBER 2, 2004

United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 18, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

No. 03-50254
_____

TEXAS ASSOCIATION OF BUSINESS AND WILLIAM O. HAMMOND,

Plaintiffs-Appellants,

versus

RONALD EARLE, DISTRICT ATTORNEY, TRAVIS COUNTY, TEXAS,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas, Austin Division
_____


Before DEMOSS, DENNIS, and PRADO, Circuit Judges.

DENNIS, Circuit Judge:

Plaintiffs-Appellants, Texas Association of Business (TAB) and William O. Hammond, filed suit in the Western District of Texas against Defendant-Appellee Ronald Earl, the District Attorney for Travis County, seeking injunctive and declaratory relief. The lawsuit arises out of a Travis County grand jury investigation of TAB for Texas Election Code violations during the 2002 state election cycle. TAB and Hammond seek an injunction against the enforcement of subpoenas issued by the grand jury, an order enjoining the entire grand jury investigation, and a judgment declaring that TAB's conduct during the 2002 campaign season

-1-

constitutes expression protected by the First Amendment guarantees of free speech and free association. The district court declined to consider these requests, citing the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971) and its progeny. We affirm. However, we decline to decide whether an injunction is necessary to relieve TAB of its obligation to produce documents under the subpoenas, as the issue has become moot.

## I. BACKGROUND

TAB is a non-profit Texas corporation that describes its purpose as the promotion of the free enterprise system. Hammond is TAB's President and Chief Executive Officer. During the 2002 election cycle, TAB promulgated a number of television and print advertisements highlighting a particular candidate's view on specific issues, such as lawsuit reform, healthcare, and taxes. TAB alleges that these ads were for informational purposes and did not advocate for the election or defeat of any particular candidate; although, the ads criticized and praised particular candidates by name.[1] TAB also maintains that the ads were created solely of their own volition without consultation with, or cooperation from, any candidate. District Attorney Earle questions TAB's assertions that no candidate cooperation or consultation occurred.

---

[1] TAB contends that the ads did not engage in express advocacy of the election or defeat of a clearly identified candidate, or in other words met the so called "magic words" test found in footnote 52 of the Supreme Court's opinion in *Buckley v. Valeo*, 424 U.S. 1(1976).

After the election cycle, five different losing candidates filed two separate lawsuits against TAB and Hammond in state court, alleging that TAB violated Texas state election law by illegally obtaining $2,000,000 and failing to disclose the expenditure of those funds for campaign purposes. In addition, a complaint was filed with the Texas Ethics Commission, which enforces the Texas Election Code, alleging various violations of the Code. The Travis County's District Attorney's office began an investigation into TAB's practices and on January 16, 2003, the 147th Travis County Grand Jury issued three subpoenas to Hammond, Don Shelton, who was TAB's Information Systems Director, and Bob Thomas, owner of Thomas Graphics, who was hired to create TAB's ads.

TAB claims that all three of the subpoenas seek to compel information that is protected by its rights to free speech and freedom of association as guaranteed in the First Amendment to the United States Constitution. Based on this assertion, TAB and Hammond filed suit in federal district court seeking: (1) an injunction to prevent the District Attorney's office from enforcing the three grand jury subpoenas, (2) an injunction to prevent the District Attorney's office from conducting a grand jury investigation into TAB's advertisements, and (3) a declaration that TAB's conduct during the 2002 election cycle was protected speech. On February 10, 2003, after conducting an evidentiary hearing, the district court denied TAB and Hammond's requests for relief and dismissed the suit,

applying the abstention doctrine set out in *Younger v. Harris*, 401 U.S. 37 (1971). TAB and Hammond timely appealed.

While TAB and Hammond were seeking relief in federal court they also sought relief within the state court system, filing a number of motions with the state district court. First, they filed a motion to quash the subpoenas, which was denied in a written order on April 8, 2003. The state court judge held that the TAB ads at issue "involve 'speech' covered by the First Amendment, thereby requiring the state to regulate in the area with narrow specificity," but that the State had offered evidence that TAB "engaged in express advocacy, improperly coordinated with candidates and political action committees, improperly mixed T.A.B. and political action committee business, and failed to properly report expenditures and contributions." Based on the above, the state court judge allowed the grand jury to proceed, but prevented the grand jury from receiving a list of TAB's members and donors, and from subpoenaing any sitting elected official without the court's approval. The protective order also forbids the release of any information obtained under the subpoenas to any outside entity or individual, including the civil litigants working with the District Attorney's office. TAB then filed writs of mandamus challenging the state court's order, which the Austin Court of Appeals and the Texas Court of Criminal Appeals denied.

In addition, after Hammond and Shelton refused to comply with another subpoena, the state court held a show cause hearing. After the hearing, both were held in contempt and the court fined them $500 each. Hammond and Shelton then filed a petition for writs of mandamus in the Texas Court of Criminal Appeals, which was denied without opinion on June 25, 2003. When Hammond refused to abide by the order and to pay the fine, the court ordered him placed into custody. Hammond filed a writ of habeas corpus. The Texas Court of Criminal Appeals granted him bail and ordered a response from the state court on the habeas charge. On October 20, 2003, the appellants TAB and Hammond partially complied with the contested subpoenas and turned over to the grand jury the requested documents, redacted in accordance with the protective order issued by the state court.

## II.  MOOTNESS

District Attorney Earle contends that because the appellants complied with the subpoena request, there is no live case or controversy and that this case should be dismissed as moot. We agree that the issue of compliance with the subpoenas' order to hand over documents is now moot. There remains, however, a case and controversy over compliance with the parts of the subpoenas ordering live testimony before the grand jury, issuance of an injunction barring the entire grand jury investigation and the granting of

declaratory relief.  Thus, we must consider whether the *Younger* abstention doctrine applies.

### III. STANDARD OF REVIEW

This court applies a two-tiered standard of review in abstention cases. *Nationwide Mut. Ins. Co. v. Unauthorized Practice of Law Comm*., 283 F.3d 650, 652 (5th Cir. 2002).  "Although we review a district court's abstention ruling for abuse of discretion, we review de novo whether the requirements of a particular abstention doctrine are satisfied."  *Id*.  "The exercise of discretion must fit within the narrow and specific limits prescribed by the particular abstention doctrine involved."  *Webb v. B.C. Rogers Poultry, Inc*., 174 F.3d 697, 701 (5th Cir. 1999).  "A court necessarily abuses its discretion when it abstains outside of the doctrine's strictures." *Id.*  Thus, we review a district court's decision to abstain for abuse of discretion, provided that the elements for *Younger* abstention are present.

### III. ANALYSIS

Under the rule set out by the United States Supreme Court in *Younger v. Harris*, federal courts must refrain from considering requests for injunctive relief based upon constitutional challenges to state criminal proceedings pending at the time the federal action is instituted.  *Younger v. Harris*, 401 U.S. 37 (1971); *Doe v. The*

*Order Desk, Inc.*, 1997 WL 405141, at *2 (N.D.Tex. July 14, 1997). On the same day that *Younger* was decided, the Court expanded the rule to apply to suits for injunctive relief. *Samuels v. Mackell*, 401 U.S. 66 (1971).

In *Younger*, the Court identified one primary source of the policy, saying, "[o]ne is the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." 401 U.S. at 43-44. The Court pointed out that this rule of equity acts to "prevent erosion of the role of the jury" and "avoid a duplication of legal proceedings and legal sanctions where a single suit would be adequate to protect the rights asserted." *Id*. at 44. The Court then went on to name the most important source for the abstention doctrine it was enunciating, "Our Federalism." The *Younger* Court used this talismanic phrase to sum up "the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id.*

There is a three-prong test for determining whether the *Younger* abstention doctrine is applicable: (1) the dispute must involve an "ongoing state judicial proceeding," (2) an important state interest in the subject matter of the proceeding must be implicated, and (3) the state proceedings must afford an adequate opportunity to raise constitutional challenges. *Wightman v. Tex. Supreme Ct.*, 84 F.3d 188, 189 (5th Cir. 1996)

If this test is met, then a federal court may only enjoin a pending state criminal court proceeding if certain narrowly delimited exceptions to the abstention doctrine apply. Specifically, courts may disregard the *Younger* doctrine when: (1) the state court proceeding was brought in bad faith or with the purpose of harassing the federal plaintiff, (2) the state statute is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it," or (3) application of the doctrine was waived. *Younger*, 401 U.S. at 49; *Trainor v. Hernandez*, 431 U.S. 434, 446 (1977); *DeSpain v. Johnston*, 731 F.2d 1171, 1180 (5th Cir. 1984).

Here, TAB and Hammond contend that the district court abused its discretion in applying the *Younger* abstention doctrine because there is no "ongoing state judicial proceeding" and because the state proceedings do not afford them an adequate opportunity to raise constitutional challenges. They essentially concede that the State

of Texas has an important state interest in ensuring that participants in the electoral process comply with its election laws. In addition, TAB and Hammond do not argue that any of the narrow exceptions to *Younger* apply.

## A. Ongoing State Proceedings

The first issue to be decided is whether state grand jury proceedings in which subpoenas have been issued constitute an "ongoing state proceeding" such that abstention is warranted. The circuits are split on this issue, with our colleagues on the Fourth and Eighth Circuits finding that a grand jury proceeding is an ongoing state proceeding and the those on the Third Circuit holding that it is not.[2] *Kaylor v. Fields* 661 F.2d 1177 (8th Cir. 1981);

---

[2] In addition, district courts in Texas and New York have weighed in on the issue with most courts finding that a grand jury proceeding is an ongoing state proceeding. *Doe v. The Order Desk, Inc.* 1997 WL 405141 (N.D.Tex. 1997)(holding that Texas grand jury proceedings constitute ongoing state proceedings for purposes of *Younger* abstention); *Notey v. Hynes*, 418 F.Supp. 1320, 1326 (E.D.N.Y. 1976)("when a grand jury has been impaneled and is sitting and investigating, there is a "criminal case" and in New York a criminal proceeding"); *Law Firm of Daniel P. Foster, P.C., v. Dearie*, 613 F.Supp 278, 280 (E.D.N.Y. 1985)("Thus, were the court to grant the relief sought, the immediate and direct effect would be to enjoin the state court from enforcing its order to comply with the subpoena and the state from pursing a grand jury investigation, which is a criminal proceeding."); *Cf. Nick v. Abrams*, 717 F.Supp. 1053, 1056 (S.D.N.Y. 1989)(This case requires and inquiry into whether a "pending state proceeding" exists when a state attorney general executes a search warrant authorized by a judge during a criminal investigation prior to arrest or indictment. For the reasons set forth below, these circumstances constitute a pending state proceeding for *Younger* abstention purposes."); *but see Brennick v. Hynes*, 471 F.Supp 863,867 (N.D.N.Y. 1979)(indicating that the Younger abstention doctrine "does not apply to state grand jury

*Craig v. Barney* 678 F. 2d 1200 (4th Cir. 1982); *Monaghan v. Deakins* 798 F.2d 632 (3rd Cir. 1986).[3]

The answer to the question of when there is exists an ongoing state proceeding may turn on a determination of which kinds of state proceedings are the relevant kind of proceeding for *Younger* purposes. The Supreme Court jurisprudence first recognized the need for abstention where criminal proceedings were ongoing.[4] *Younger*'s applicability has been expanded to include certain kinds of civil and even administrative proceedings that are "judicial" in nature. *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc*., 477 U.S. 619 (1986)(finding that *Younger* abstention was appropriate when matter was before a state commission charged with hearing gender discrimination claims); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 243 (1982) (applying the *Younger* doctrine to intervention in ongoing attorney disciplinary proceedings); *Juidice v. Vail*, 430 U.S. 327 (1977) (holding that *Younger* should apply in challenges to civil contempt proceedings against a default judgment debtor who failed to comply with a subpoena).

---

proceedings where the target for investigation has no immediate recourse to state courts.").

[3] Notably, the U.S. Supreme Court granted certiorari in the case from the Third Circuit, but the issue was mooted before any decision could be rendered. *Deakins v. Monaghan*, 484 U.S. 193 (1988).

[4] *Younger*, 401 U.S. at 37; *Samuels*, 401 U.S. at 66. In these cases there had been an indictment or other formal charge filed against the parties seeking relief.

A grand jury proceeding has both administrative functions, like investigating wrongdoing and making an initial determination of probable cause to file criminal charges, and judicial functions, wherein it may summon witnesses and compel the production of documents. However, both the administrative and judicial functions pertain directly to the enforcement of the state's criminal laws. It is the criminal law arena where the federal courts' deference to state courts has been most pronounced. *See Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); *Juidice v. Vail,* 430 U.S. 327, 344 (1977). Other proceedings have been found to be due the same deference because of analogy to, or nexus with, criminal proceedings. *Middlesex County Ethics Comm.*, 457 U.S. at 432. ("The importance of the state interest may be demonstrated by the fact that the noncriminal proceedings bear a close relationship to proceedings criminal in nature.")

In Texas, grand jury proceedings bear a very close relationship with criminal trial proceedings.[5] The grand jury is said to be "an arm of the court by which it is appointed." *Dallas County Dist. Attorney v. Doe*, 969 S.W.2d 537, 542 (Tex. App. 1998). The district court impanels the grand jury after testing the qualifications of its members, administers the jurors' oath, and instructs them as to

---

[5] In Texas, a grand jury has the power to indict. Tex Code Crim. P. art. 20.19-22. In *Craig*, the Fourth Circuit found that an investigation by a Virginia grand jury, which does not have the power to indict, constituted an ongoing state proceeding for purposes of *Younger* abstention. 678 F. 2d at 1201.

their duties as grand jurors. Tex. Code Crim. P. art. 19.24, 19.26, 19.32, 19.34, 19.34, 19.35. The grand jury can seek advice from the district court on any matter it is considering. Tex. Code Crim. P. art. 10.06. Any subpoena sought to be issued by the grand jury is issued by the district court and enforced by that court. Tex. Code Crim. P. art. 24.01; 20.15; 24.05-08. Such subpoenas may also be challenged in the district court by means of a motion to quash the subpoena, thus providing a judicial forum in which to raise constitutional issues.

## B. Important State Interest

The plaintiffs concede that the State of Texas's interest in the enforcement of its election laws is an important interest. As there is no dispute as to this issue we move on to the third prong of the test.

## C. Adequate Opportunity to Raise Constitutional Challenges

The third prong of the test for *Younger* applicability is whether the state proceeding affords an adequate opportunity to raise constitutional challenges. *Wightman,* 84 F.3d at 189. We find that it does. In this case, the plaintiffs have had ample opportunity to raise constitutional claims, and have in fact done so in the district court, an intermediate appellate court, and Texas's highest appellate court with jurisdiction over this dispute. In fact, the trial court judge limited the scope of the challenged subpoenas on constitutional grounds.

Texas law allows persons served with a grand jury subpoena to move to quash the subpoena. *See Dallas County Dist. Attorney,* 969 S.W.2d at 542. If dissatisfied with the district court's ruling on the motion to quash, appellate review is available through mandamus. *Kidd v. Lance,* 794 S.W.2d 586, 587 (Tex. App. 1990). In addition, the constitutionality of any subpoena and the issue of whether TAB's conduct was protected under the First Amendment can be litigated at any criminal trial arising from the grand jury investigation.[6] The availability of the above opportunities to litigate constitutional claims in the state courts constitute "an adequate opportunity to raise constitutional challenges" in the state proceedings such that this prong of the *Younger* test is satisfied and abstention is warranted.

## IV. Conclusion

In accordance with the abstention doctrine established in *Younger v. Harris* and its progeny we AFFIRM the order of the district court dismissing this action.

---

[6] The opportunity to raise constitutional claims at trial has been held sufficient by the Eighth Circuit. *Kaylor,* 661 F.2d at 1181.