**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 23, 2013

No. 13-20243

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

TRANSOCEAN DEEPWATER DRILLING, INCORPORATED,

Defendant - Appellant

On Motion for Stay of Judgment Pending Appeal

Before KING, CLEMENT, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Pending before us is Defendant-Appellant Transocean Deepwater Drilling, Inc.'s motion to stay judgment pending appeal. For the reasons that follow, we DENY the motion.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

The Chemical Safety and Hazard Investigation Board ("CSB") is an independent governmental board composed of experts in industrial safety and environmental health. 42 U.S.C. § 7412(r)(6)(A)–(B). It is charged with investigating any actual or potential "accidental release"—that is, "an

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

unanticipated emission of a regulated substance or other extremely hazardous substance into the ambient air from a stationary source," *id.* § 7412(r)(2)(A)—and with recommending measures to prevent future accidental releases. *Id.* § 7412(r)(6)(C), (F).

On April 20, 2010, a blowout and subsequent explosion occurred at the Macondo lease site on the United States Outer Continental Shelf in the Gulf of Mexico. According to Transocean, oil traveled up the riser to the deck of the mobile offshore drilling unit ("MODU"), where it combusted in a fire until the MODU collapsed and sank two days later. *See In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010 (In Re: "Deepwater Horizon")*, No. 2:10-md-02179, slip op. at 2 & n.4 (E.D. La. Feb. 22, 2012) (order on cross-motions for partial summary judgment). As separate Transocean and government investigative teams later stated, the blowout emitted large amounts of hazardous gases, which "made an explosion inevitable."

Invoking its jurisdiction to investigate accidental releases of regulated or extremely hazardous substances into the ambient air, the CSB asked Transocean (the MODU's owner) to preserve all evidence relevant to the CSB's investigation of the incident. The CSB later served Transocean with administrative subpoenas, demanding documents that had been collected by a Transocean internal investigative team, as well as documents that had been provided to other government agencies. As later alleged, Transocean only partially complied with the subpoenas. On October 12, 2011, after almost one year of seeking Transocean's compliance through non-judicial means, the government filed in the district court a petition to enforce the CSB's subpoenas.

Transocean moved to dismiss the petition and quash the subpoenas, arguing that the CSB lacked statutory authority to investigate the Macondo well incident. After considering the parties' written submissions and oral arguments, the district court, in a comprehensive opinion, denied Transocean's motion and

granted the government's petition to enforce the subpoenas. Final judgment was entered on April 22, 2013.

Transocean asked the district court to stay execution of its judgment pending appeal. The district court temporarily stayed its judgment to permit further briefing. After considering the parties' arguments, the district court denied the motion. Transocean now asks this court for a stay pending appeal.

## II. LEGAL STANDARDS

"A stay is not a matter of right . . . . It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (alteration omitted) (internal quotation marks and citations omitted). We review a district court's denial of a stay pending appeal for abuse of discretion. *Beverly v. United States*, 468 F.2d 732, 740 n.13 (5th Cir. 1972).

The Supreme Court has repeatedly stated that a four-factor test governs a court's consideration of a motion for stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 434 (citation omitted); *see, e.g.*, *Chafin v. Chafin*, 133 S. Ct. 1017, 1027 (2013); *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). Under this "traditional standard," the first two factors "are the most critical." *Nken*, 556 U.S. at 434. The final two factors "merge when the Government is the opposing party." *Id.* at 435. The applicant bears the burden of showing that a stay is justified. *Id.* at 433–34.

Instead of seeking to satisfy the traditional standard, in which courts begin by evaluating whether an applicant has made a "strong showing" that success on the merits is likely, Transocean turns to our decision in *Ruiz v. Estelle* (*Ruiz I*), 650 F.2d 555 (5th Cir. Unit A June 1981) (per curiam). We held in *Ruiz*

No. 13-20243

*I* that on a motion for stay pending appeal "the movant need not always show a 'probability' of success on the merits." *Id.* at 565. "[I]nstead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay."[1] *Id.* While citing *Ruiz I*, however, Transocean asks us to apply a variant of *Ruiz I* that uses a sliding scale approach "in which the probability of success that must be demonstrated is inversely proportionate to the amount of irreparable injury that would be suffered absent a stay."[2] Transocean Mot. at 4. While the sliding scale approach has been adopted by some other circuits, *see, e.g.*, *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291–92 (D.C. Cir. 2009); *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006), we have continued to use the *Ruiz I* test.

In repeatedly reaffirming *Ruiz I*, we have reiterated that "[l]ikelihood of success remains a prerequisite in the usual case" and "[o]nly 'if the balance of equities (*i.e.* consideration of the other three factors) is . . . *heavily tilted* in the movant's favor' will we issue a stay in its absence, and, even then, the issue must be one with patent substantial merit." *Ruiz v. Estelle* (*Ruiz II*), 666 F.2d 854, 856–57 (5th Cir. 1982)(quoting *Ruiz I*, 650 F.2d at 565–66); *see also Weingarten v. Realty Investors v. Miller*, 661 F.3d 904, 910 (5th Cir. 2011); *Arnold v. Garlock,*

---

[1] We based our holding in *Ruiz I* on the D.C. Circuit's decision in *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977).

[2] Transocean is not consistent in its formulation of the *Ruiz* standard. In a different part of its motion, it sets out the standard as follows:

> In order to merit a stay, the movant need establish only that the case was sufficiently close (or the issues sufficiently novel) such that the party has a reasonable likelihood of appellate success, and that there are equitable reasons for staying the relief temporarily. This standard is further loosened in cases, like this one, that present the courts with a serious legal question.

Transocean Mot. at 7. This formulation is wrong, i.e., not faithful to our precedents, in all material respects.

No. 13-20243

*Inc.*, 278 F.3d 426, 438–39 (5th Cir. 2001); *Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 23–24 (5th Cir. 1992); *O'Bryan v. McKaskle*, 729 F.2d 991, 993 (5th Cir. 1984) (per curiam).

Because Transocean relies on *Ruiz* and the government argues in a similar vein, we will consider this matter under the *Ruiz* standard.

## III. DISCUSSION

Transocean has failed to satisfy its burden under *Ruiz*.

### A.    Success on the Merits

Transocean has not even attempted to make a "strong showing that [it] is likely to succeed on the merits." *Nken*, 556 U.S. at 434. Instead, invoking *Ruiz,* it relies on the "substantial case on the merits" standard. Seeking to satisfy *Ruiz*'s prerequisites, Transocean argues that "serious legal questions" are implicated in this matter. The district court agreed, stating "[t]he questions include whether, under the Clean Air Act and related regulations, the *Deepwater Horizon* qualifies as a 'stationary source' and whether the release of gasses from the seabed went into the 'ambient air.'" We assume, without deciding, that Transocean has raised serious questions respecting statutory interpretation and the CSB's jurisdiction. *See Wildmon*, 983 F.2d at 24 (a legal question may be "serious" when it implicates "far-reaching effects or public concerns").

While ruling firmly against Transocean on the merits, the district court also concluded that Transocean had made out a "substantial case." Again, we assume, without deciding, that the district court is correct on this point. So, for purposes of our *Ruiz* inquiry, we accept that Transocean has raised serious legal questions and has made a substantial case on the merits. Regardless, the three *Ruiz* equities do not "weigh heavily" in favor of granting a stay. *See Ruiz*, 650 F.2d at 565. Accordingly, Transocean fails the *Ruiz* test.

### B.    Irreparable Injury

5

No. 13-20243

The second factor in the traditional test (and the first of the three equities under *Ruiz*) is "whether the applicant will be irreparably injured absent a stay." *Nken*, 556 U.S. at 434. Under the traditional test, this factor and the "likelihood of success" factor are "the most critical." *Id.* This factor weighs against Transocean because it has offered no valid reason why immediately turning over the subpoenaed documents will cause irreparable injury. *See Weingarten*, 661 F.3d at 913.

Transocean's principal argument is that denial of a stay—i.e., being forced immediately to comply with the subpoenas—will cause irreparable injury by mooting its appeal. This is so, Transocean argues, because compliance with the subpoenas will remove it from "an adversarial posture with CSB." *See Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013) ("A case becomes moot . . . when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." (internal quotation marks and citation omitted)).

In *Church of Scientology of California v. United States*, 506 U.S. 9, 10–11 (1992), the Supreme Court discussed whether a matter was rendered moot by compliance with a district court's final order enforcing an IRS summons that permitted tax agents to examine and make copies of certain records (a close parallel to the subpoenas at issue here). The Court held that although "a court may not be able to return the parties to the *status quo ante*," a case is not moot if a court "can fashion *some* form of meaningful relief." *Id.* at 12–13. When documents have been provided pursuant to a subpoena later found to be unlawful, a court can fashion "meaningful relief" by ordering the documents returned. *Id.* This is because the owner of subpoenaed documents retains "an obvious possessory interest in [its] records." *Id.*; *see also In re Motor Fuel Temperature Sales Practices Litig.*, 641 F.3d 470, 483 (10th Cir. 2011); *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 469 (2d Cir. 1996); *FTC v. Gibson Prods. of San Antonio, Inc.*, 569 F.2d 900, 903 (5th Cir. 1978).

No. 13-20243

Transocean contends this reasoning is inapposite because, in each of the cases we have cited, the party resisting the subpoena had a privacy interest in the subpoenaed documents or was subject to a criminal or civil enforcement action by the agency seeking the records. Transocean has repeatedly emphasized that it retains no privacy interest in the documents the CSB seeks, many of which are publicly available as a result of earlier government investigations and civil litigation against Transocean. *See In Re: "Deepwater Horizon"*, No. 10-md-02179 (E.D. La. filed Aug. 10, 2010). Further, although the CSB may investigate accidental releases and recommend measures to prevent future releases, it cannot enforce its own regulations. *See* 42 U.S.C. § 7412(r)(6)(O). More than that, its "conclusions, findings, or recommendations" cannot be used in an "action or suit for damages." *Id.* § 7412(r)(6)(G).

Transocean's argument is unavailing. In *Church of Scientology*, the Supreme Court held out as separate a party's possessory interest and its privacy interest in subpoenaed records. 506 U.S. at 12–13; *see also Soldal v. Cook County, Ill.*, 506 U.S. 56, 62–66 (1992) (discussing the independent nature of possessory and privacy interests under the Fourth Amendment); *ADAPT of Phila. v. Phila. Hous. Auth.*, 417 F.3d 390, 393–94 (3d Cir. 2005) (holding that documents' return would provide relief, "however Pyrrhic," with respect to possessory interests, and would "alleviate, at least in part, any affront to" privacy rights that had already been violated); *Reich v. Nat'l Eng'g & Contracting Co.*, 13 F.3d 93, 98 (4th Cir. 1993) (recognizing *Church of Scientology*'s distinction between possessory and privacy interests). Although Transocean contends that the documents' return would "provide[] no relief whatsoever to Transocean," the Supreme Court has held that mootness depends on whether a "legally cognizable interest" is still in play, *Already, LLC*, 133 S. Ct. at 726, which is not necessarily the interest that is of most importance to a litigant. *See Church of Scientology*, 506 U.S. at 13 (the relief provided need not

7

be "fully satisfactory"). Because Transocean's possessory interest can be vindicated by ordering its records returned, this remedy's effectiveness does not depend on the documents' confidentiality. *See id.* at 12–13; *ADAPT of Phila.*, 417 F.3d at 393–34.[3]

Transocean has identified no particular interest in the subpoenaed documents. If this is true, then we find it remarkable that Transocean has resisted the CSB's subpoenas for approximately thirty-one months, and continues to resist them on appeal. To be clear, Transocean has not argued that the burden of complying with the subpoenas is an irreparable injury, or that the absence of a stay will irrevocably deprive it of some other property or liberty interest. In any event, the district court correctly recognized that the harm to Transocean from producing documents that it has already provided to other government agencies "is less than the burden of producing documents . . . in the

---

[3] Transocean relies on inapposite authority for its argument. In *Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979), the FBI's right of appeal would have become moot absent a stay because, had the disputed documents been given to the plaintiff newspaper, their confidentiality would have "be[en] lost for all time." Transocean ignores that, in granting the stay, the court also considered the *Holiday Tours* factors, finding that they all weighed in the FBI's favor. *Id.* Moreover, because Transocean has disavowed any privacy interest in the subpoenaed records, *Providence Journal* is not comparable.

Transocean offers a number of cases in which the defendant's court-ordered compliance with an IRS subpoena mooted its appeal. *See, e.g.*, *United States v. Arthur Andersen & Co.*, 623 F.2d 720, 724–25 (1st Cir. 1980). These decisions have been effectively overruled. *See Church of Scientology*, 506 U.S. at 15 ("[T]his case is not moot because if the summons were improperly issued or enforced a court could order that the IRS' copies of the tapes be either returned or destroyed."); *United States v. Golden Valley Elec. Ass'n*, 689 F.3d 1108, 1112–13 (9th Cir. 2012); *In re Grand Jury Proceedings*, 142 F.3d 1416, 1422 (11th Cir. 1998).

In *Texas Association of Business v. Earle*, 388 F.3d 515, 517 (5th Cir. 2004), a federal district court refused to enjoin enforcement of a state district attorney's grand jury subpoenas. We held that the issue of compliance with the subpoenas was moot because the state court defendants had released the documents pursuant to a state court order. *Id.* at 518. The panel did not cite *Church of Scientology*, nor did the parties mention it in their briefs. Subsequent cases discuss *Earle* in the context of abstention. Because *Church of Scientology* is squarely applicable in the instant circumstances, and *Earle* was decided in the context of an effort to obtain a ruling from a federal court enjoining a state district attorney's office from conducting a grand jury investigation (a situation far removed from ours), *Church of Scientology* provides the rule of decision that we apply today.

first instance." Further, how the lack of confidentiality strengthens Transocean's case for a stay escapes us because this means it will suffer no loss of privacy by immediately releasing the documents. Transocean cannot argue that it will suffer an irreparable injury by losing its right to vindicate an interest on appeal, but fail to enlighten us as to what that interest is. *See Nken*, 556 U.S. at 433–34. Transocean points *only* to the prospect of its appeal being mooted if it complies with the subpoenas, and that argument is absolutely meritless. As the district court correctly held, Transocean cannot justify a stay merely by arguing that it should not have to comply with a subpoena enforcement order "unless and until the appellate court says it must."

## C.    Injury to CSB and the Public Interest

The "injury to the other parties" and "public interest" factors "merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. Accordingly, we consider them together.

The injury that a stay would work upon the government and the public is clear. As we have discussed, the CSB is authorized to investigate accidental releases of hazardous substances and make recommendations to prevent future releases. *See* 42 U.S.C. § 7412(r)(6). Delaying the subpoenaed documents' release would impede the accomplishment of this mission, which is of unquestionable significance to workplace and public safety.

The injury to the public is compounded by the great amount of time it has taken to secure enforcement of the CSB's subpoenas. Transocean has resisted the subpoenas for thirty-one months, of which twenty-one were consumed by litigation. An appeal in this court could take anywhere from one to three years. By the time the subpoenas' enforceability is finally determined, a delay in the documents' release may cause the CSB to have missed the opportunity to prevent another accident of the type that occurred on the *Deepwater Horizon*, which itself resulted in eleven deaths. If this danger were not obvious enough,

a CSB lead investigator's affidavit confirms that documents Transocean is withholding are necessary to completing the CSB's report on the Macondo well incident.

Transocean argues that CSB will suffer no injury from a stay because various government agencies have already "received exhaustive information, documents, and records from Transocean concerning the BP Oil Spill" through other investigations and the *Deepwater Horizon* litigation. The district court found, however, that the subpoenas cover some documents that have not been made available to other government agencies, and Transocean's bare argument does not satisfy its burden of proving otherwise.[4] *See Nken*, 556 U.S. at 433–34. Moreover, Transocean has offered no authority suggesting that possession of subpoenaed documents by a different government agency can be imputed to the agency that issued the subpoena. If anything, the legal authority on this point contradicts Transocean's position. *See United States v. Powell*, 379 U.S. 48, 57–58 (1964) (to obtain enforcement of a subpoena, the IRS must prove that it (not some other agency) does not already possess the sought-after information); *United States v. Chevron U.S.A., Inc.*, 186 F.3d 644, 650 (5th Cir. 1999) (a government agency's possession of documents does not satisfy a subpoena by the agency's independently operating inspector general).

Relying on *Holiday Tours*, 559 F.2d at 843, Transocean contends that the public interest generally favors preservation of the status quo pending appeal. In *Holiday Tours*, the district court had enjoined the defendant bus tour service from operating without the appropriate certificate, but stayed its judgment

---

[4] The Panel on Multidistrict Litigation, in vacating a conditional order transferring the government's enforcement petition to the MDL litigation in the Eastern District of Louisiana, similarly found that "Transocean has not identified with any specificity the documents and information that it has produced in the MDL and that it believes to be responsive to the CSB's subpoenas." *In Re: "Deepwater Horizon"*, No. 2:10-md-02179, slip op. at 2 (E.D. La. Feb. 3, 2012) (order vacating conditional transfer order).

pending appeal because enforcement would have meant the business's destruction. *Id.* The court of appeals explained that the plaintiff had not shown any particularized public interest that would overcome the injury to the defendant. *Id.* Transocean thus ignores that the equities in Holiday Tours favored maintaining the status quo. Moreover, the proponent of the status quo in *Holidays Tours* had prevailed below, whereas Transocean did not, and thus bears the burden of showing that the district court abused its discretion in refusing to issue a stay. Accordingly, Transocean's misreading of *Holiday Tours* is not a valid ground to perceive a public interest in any case where the status quo is disturbed.

Finally, Transocean submits that the public has an interest in having "the appellate courts . . . consider[] the serious legal questions raised in this case"—an interest that cannot be vindicated if its appeal becomes moot. Because Transocean's appeal will not be mooted by compliance with the subpoenas, we will have ample opportunity to consider the legal questions raised in this case.

### D.    Conclusion

Even assuming that Transocean has made out a "substantial case" with respect to a serious legal question, we find that it has given no reason why it should not immediately turn over the subpoenaed documents. The government has obtained a final enforcement order after being forced to litigate this matter for approximately twenty-one months. The CSB and the public, in addition to being "generally entitled to the prompt execution of orders that the legislature has made final," *Nken*, 556 U.S. at 427, suffer further injury each day that the CSB is prevented from concluding its investigation into an industrial accident that resulted in eleven deaths. As we have explained, the prevention of similar accidents in the future is an important public interest. Transocean has utterly failed to justify making the government and the public wait any longer for the CSB's investigative report and safety recommendations.

11

No. 13-20243

Because Transocean has not established that "the balance of the equities weighs heavily in favor of granting the stay," Transocean fails to satisfy the *Ruiz* standard. 650 F.2d at 565. Transocean does not purport to have made a "strong showing that [it] is likely to succeed on the merits," and thus also has failed to satisfy its burden under the traditional test. *Nken*, 556 U.S. at 435. Even if it had made this showing, we likely would not grant a stay because the three remaining factors weigh against Transocean.

In reaching this conclusion, we find instructive the Supreme Court's admonition that "[a] stay is an intrusion into the ordinary processes of administration and judicial review." *Id.* at 427 (internal citations and quotation marks omitted). We cannot say that the district court abused its discretion in finding that Transocean failed to justify such an intrusion.

## IV. CONCLUSION

Transocean's motion for a stay pending appeal is DENIED.