# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-30519
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

March 22, 2018

Lyle W. Cayce
Clerk

SHANE M. GATES,

Plaintiff - Appellant

v.

RODNEY JACK STRAIN, Sheriff, in his official and individual capacity;
WALTER P. REED, District Attorney, in his official capacity; CHARLES M.
HUGHES, JR., Attorney; NATHAN MILLER, Sheriff Deputy; ROGER
GOTTARDI, Sheriff Deputy; BRIAN WILLIAMS, Sheriff Deputy; PHILIP
DUIETT, Lacombe Nurse,

Defendants - Appellees

------------------------

SHANE M. GATES,

Plaintiff - Appellant

v.

RICHARD SWARTZ, Judge; NICHOLAS F. NORIEA, JR., Assistant District
Attorney; MARIE-ELISE PRIETO, Clerk of Court - St. Tammany; JEFF
LANDRY, Louisiana Attorney General; RONALD GRACIANETTE, Assistant
District Attorney; KATHY SHERWOOD, Captain; KATHRYN LANDRY;
RODNEY STRAIN, St. Tammany Parish Sheriff Office Sheriff, also known as
Jack Strain; ST. PAUL FIRE ; MARINE INSURANCE COMPANY; WALTER
P. REED,

Defendants - Appellees

No. 17-30519

---

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC Nos. 2:07-CV-6983; 2:13-CV-6425

---

Before KING, ELROD, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Shane Gates was arrested by the St. Tammany Parish Sheriff's Office in 2006. In 2007, he filed this action under 42 U.S.C. § 1983 alleging that the arresting officers used excessive force and that he was being prosecuted in bad faith. The case has been stayed since 2008 pending the resolution of the underlying state criminal charges. He was acquitted of aggravated flight, a felony, in 2012, and the state then sought to pursue prosecution on the remaining misdemeanor charges of resisting arrest and driving while intoxicated. Gates then fled St. Tammany Parish, and has not appeared for trial on those charges. Gates moved in the district court to lift the stay for the purpose of entering an injunction preventing the state from prosecuting him for the pending misdemeanor charges. The state moved to lift the stay for the limited purpose of dismissing the case with prejudice for failure to prosecute. The district court determined that *Younger* abstention precluded an injunction, and dismissed the case with prejudice. We affirm.

**I.**

On November 16, 2006, plaintiff-appellant Shane Gates was pulled over and arrested by deputies of the St. Tammany Parish Sheriff's Office. According to the police report, Deputy Nathan Miller signaled to Gates to pull over after observing Gates's vehicle swerve repeatedly while driving on Interstate 12. The report indicates that Gates then accelerated to 104 miles-per-hour in an attempt to flee before finally pulling over. Gates then opened his car door and fell to the ground. Deputy Miller attempted to move Gates away from the

shoulder of the interstate, but, according to the police report, Gates began to wrestle with Miller. Miller then held Gates down on the hood of his patrol car while waiting for backup. A few minutes later, Deputies Gottardi and Williams arrived. Gottardi advised Gates that he was under arrest and attempted to place him in handcuffs. The report indicates that Gates then began flailing his arms, and that Deputy Miller administered a one-second burst of pepper spray to stun Gates and enable the deputies to handcuff him, which they did. While Gottardi attempted to place Gates in the back of Williams's patrol car, the report states that Gates threw his head and body back against Gottardi. Gottardi took Gates down to the ground, causing Gates's face to strike the asphalt and resulting in a one-half inch laceration near his left eye. Gates was transported to the emergency room for treatment. According to the police report, medical records from the emergency room indicate that Gates's blood-alcohol level was .273 at the time he was admitted.

Gates's arrest report cites the following offenses: driving while intoxicated, reckless operation of a motor vehicle, open container in a motor vehicle, aggravated obstruction of a highway of commerce, and resisting an officer. He was later also charged with aggravated flight from a police officer. In 2007, Gates filed in federal district court a § 1983 suit alleging that the deputies used excessive force in arresting him and that he was being prosecuted in bad faith in state court. He sought damages and an injunction preventing his prosecution in state court.[1] That action was stayed in 2008, pending resolution of the underlying criminal charges against Gates. The action was reopened in 2012 after a state-court jury found Gates not guilty of aggravated flight, but then stayed again after the district court became aware

---

[1] The 2007 action was later consolidated with a substantially similar related case Gates filed in 2013.

No. 17-30519

of still-pending misdemeanor charges including driving while intoxicated and resisting an officer.  The misdemeanor charges were originally set for trial on August 31, 2012, but the trial was continued due to Hurricane Isaac.  Gates was then ordered to appear on November 22, 2013, to be served with a new trial date.  When he failed to appear, an attachment was issued for his arrest.  He has failed to appear before the state court since, and his whereabouts are unknown, even to his counsel.

On October 20, 2016, defendants filed a motion in the district court requesting that the stay be lifted for the limited purpose of allowing Gates to appear for service for his misdemeanor trial and that, should he fail to appear, his § 1983 action should be dismissed under Fed. R. Civ. P. 41(b) for failure to prosecute.  On December 14, 2016, the district court denied the motion, but ordered Gates to file, no later than January 23, 2017, a motion explaining why the Anti-Injunction Act, 28 U.S.C. § 2283, and related abstention doctrine did not preclude his request for an injunction.  The district court warned that failure to file such a motion would result in dismissal of his case with prejudice pursuant to Rule 41(b).  On January 23, 2017, Gates filed a motion asking the district court to lift the stay and enter an injunction preventing defendants from prosecuting him for the pending misdemeanor charges.  Defendants then filed their own motion asking the district court to lift the stay and dismiss Gates's case with prejudice for failure to prosecute.  After a hearing, the district court denied Gates's motion and granted defendants' motion to dismiss the case with prejudice.  Gates timely appealed.

## II.

Gates first contends that the district court erred by not enjoining the state from prosecuting him for the pending misdemeanor charges.  We review both the denial of a motion for a permanent injunction and an abstention ruling for abuse of discretion.  *Tex. Ass'n of Bus. v. Earle*, 388 F.3d 515, 518 (5th Cir.

4

No. 17-30519

2004) (abstention ruling); *St. Paul Mercury Ins. Co. v. Williamson*, 332 F.3d 304, 308 (5th Cir. 2003) (denial of motion for permanent injunction).  However, we review *de novo* both a district court's legal determination regarding the applicability of the Anti-Injunction Act, *United States v. Billingsley*, 615 F.3d 404, 409–10 (5th Cir. 2010), and "whether the requirements of a particular abstention doctrine are satisfied," *Tex. Ass'n of Bus.*, 388 F.3d at 518 (quoting *Nationwide Mut. Ins. Co. v. Unauthorized Practice of Law Comm.*, 283 F.3d 650, 652 (5th Cir. 2002)).

The Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.  Section 1983 is an express authorization from Congress permitting federal courts to enjoin state proceedings in order to protect federal rights.  *See Mitchum v. Foster*, 407 U.S. 225, 242–43 (1972).  However, § 1983 does not "qualify in any way the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding."  *Id.* at 243; *see also Younger v. Harris*, 401 U.S. 37, 43–47 (1971).  Under the *Younger* abstention doctrine, federal courts should generally decline to exercise jurisdiction when:  "(1) the federal proceeding would interfere with an 'ongoing state judicial proceeding'; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has 'an adequate opportunity in the state proceedings to raise constitutional challenges.'"  *Bice v. La. Pub. Def. Bd.*, 677 F.3d 712, 716 (5th Cir. 2012) (quoting *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

Where those three criteria are satisfied, a federal court may enjoin a pending state-court criminal proceeding only if:  (1) the state-court proceeding was brought in bad faith or to harass the federal plaintiff; (2) the federal

plaintiff seeks to challenge a state statute that is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it," or (3) where other "extraordinary circumstances" threaten "irreparable loss [that] is both great and immediate." *Younger*, 401 U.S. at 45, 53–54; *accord Moore v. Sims*, 442 U.S. 415, 432–33 (1979).[2]

Here, the district court correctly determined that the three criteria that generally require *Younger* abstention are satisfied. First, Gates requested that the district court enjoin his pending state-court criminal proceeding. The federal proceeding would therefore clearly interfere with an ongoing state judicial proceeding. Second, the underlying state proceeding concerns the enforcement of state criminal laws, something in which the state has a strong interest. Third, Gates can raise his challenges to the state criminal proceedings in state court. To the extent that Gates argues that he has been unsuccessful or is likely to be unsuccessful in raising his constitutional claims in state court that is irrelevant. The relevant question is whether the would-be federal plaintiff has the *opportunity* to raise his federal claims in state court. *See Moore*, 442 U.S. at 425 ("[T]he federal court should not exert jurisdiction if the plaintiffs 'had an *opportunity* to present their federal claims in the state proceedings.'" (quoting *Juidice v. Vall*, 430 U.S. 327, 337 (1977))); *id.* at 425–26 ("Certainly, abstention is appropriate unless state law clearly bars the interposition of the constitutional claims."). Gates does not contend that he cannot *raise* his constitutional claims in the state court. Accordingly, *Younger* abstention precludes an injunction here unless one of the three narrow exceptions applies.

---

[2] We have recognized that application of the *Younger* abstention doctrine can also be waived, *Tex. Ass'n of Bus.*, 388 F.3d at 519, but Gates does not argue that the state has waived abstention here.

No. 17-30519

Gates contends that the state prosecution has been taken in bad faith or that other extraordinary circumstances warrant enjoining the state criminal proceedings. Specifically, he argues that: (1) his prosecution for resisting an officer was instigated by the parish's insurer, St. Paul-Travelers (whom former district attorney Walter Reed privately represented and from whom he derived personal financial benefits, which Gates argues amounted to a Hobbs Act violation), in order to preclude § 1983 liability for excessive force; (2) prosecution for the pending misdemeanor offenses would constitute double jeopardy; and (3) prosecution would violate state and federal speedy-trial laws. We agree with the district court that Gates's asserted grounds for an injunction neither fit within the narrow bad-faith exception nor present the kind of extraordinary circumstances that justify departure from the general rule of non-interference.

To the first point, there is no evidence of bad faith. A prosecution is taken in bad faith if state officials proceed "without hope of obtaining a valid conviction." *Perez v. Ledesma*, 401 U.S. 82, 85 (1971); *accord Ballard v. Wilson*, 856 F.2d 1568, 1571 (5th Cir. 1988). "[T]he 'bad faith' exception is narrow and should be granted parsimoniously." *Hefner v. Alexander*, 779 F.2d 277, 280 (5th Cir. 1985). It is Gates's burden to establish actual proof of bad faith. *Hensler v. Dist. Four Grievance Comm. of State Bar of Tex.*, 790 F.2d 390, 391 (5th Cir. 1986). Here, Gates does not dispute that he was cited for resisting an officer on the day of his arrest. While he was not charged with resisting an officer in the original bill of information, two counts of resisting an officer (one with respect to Deputy Miller and one with respect to Deputy Gottardi) were added on September 10, 2007, after the district attorney received a statement from Deputy Miller expressing his belief that Gates should be charged with resisting an officer. While Gates contends that the Miller statement was forged, he has not proved that the state's prosecution for resisting arrest was

7

initiated without hope of obtaining a valid conviction.[3]   Furthermore, while Gates makes much of his belief that the relationship between District Attorney Reed and St. Paul-Travelers amounted to a violation of the Hobbs Act, he does nothing to connect that alleged violation to *Younger*'s bad-faith exception.  He appears to argue that Reed acted in bad faith by attempting to use the resisting-arrest charge to negotiate a release of Gates's § 1983 claims, but that argument fails.  *See Town of Newton v. Rumery*, 480 U.S. 386, 393–98 (1987) (upholding enforcement of release-dismissal agreement dismissing criminal charges in exchange for waver of right to sue under § 1983).

Gates next contends that his prosecution for the misdemeanor offenses of driving while intoxicated and resisting an officer would constitute double jeopardy.  Double-jeopardy claims can constitute the kind of extraordinary circumstances that justify an exception from *Younger*, *see Nivens v. Gilchrist*, 444 F.3d 237, 242–43 (4th Cir. 2006); *Showery v. Samaniego*, 814 F.2d 200, 201 n.5 (5th Cir. 1987), but Gates has not established a likely double-jeopardy violation.  Gates argues that because the state presented evidence relevant to the driving-while-intoxicated and resisting-arrest charges during his trial for aggravated flight and the jury acquitted him, the state cannot present that same evidence again.  He relies on *Dowling v. United States*, 493 U.S. 342 (1990), to argue that because the jury failed to find him guilty beyond a

---

[3] The only evidence that Gates cites that supports his allegation that the Miller letter was forged is the affidavit of his former attorney, Daniel Abel, in which Abel states that, in the course of representing Gates, he "acquired personal knowledge" of numerous crimes committed by the District Attorney's office, including the "forged 'victim letter' purporting to have been written by former Deputy Sheriff Nathan Miller."  However, he does not establish any basis for his asserted personal knowledge.  He does not assert, for example, that he was present when the allegedly forged letter was written, that he is familiar with Miller's signature and knows that the signature on the letter is not Miller's, or that anyone told him that the letter was forged.  Accordingly, the statement in the affidavit that the Miller letter was forged would likely not be admissible as evidence at trial. *See United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 508 (5th Cir. 2008).

reasonable doubt of aggravated flight, the state cannot now use any of the same evidence to convince a jury that he is guilty beyond a reasonable doubt of driving while intoxicated or resisting an officer. *See id.* at 348–49 (explaining that double jeopardy does not preclude introducing evidence to establish a fact a jury previously failed to find beyond a reasonable doubt were, at the subsequent trial, the jury was only required to find that same fact by a lower evidentiary standard). But Gates misses *Dowling*'s broader point. As the Supreme Court explained, the collateral-estoppel element of double jeopardy prevents relitigating "an issue of ultimate fact" that has already been "determined by a valid and final judgment." *Id.* at 347–48. But where, as here, a "prior acquittal did not determine an ultimate issue in the present case," double-jeopardy concerns are not implicated. *Id.* at 348. Gates has not "demonstrate[d] that his acquittal in his first trial represented a jury determination that he was not" driving while intoxicated or that he did not resist an officer.[4] *See id.* at 350. Accordingly, his prosecution for the pending misdemeanors would not violate the Double Jeopardy Clause and an injunction is not warranted on this basis.

Finally, Gates argues that an injunction is warranted because his prosecution for the pending misdemeanors would violate state and federal speedy-trial laws. However, the alleged denial of a speedy trial is not itself a legitimate basis on which to enjoin a state criminal proceeding. *See Brown v. Ahern*, 676 F.3d 899, 902–03 (9th Cir. 2012) (holding that federal courts may not enjoin state criminal prosecution on basis of alleged speedy-trial violation absent an independent showing of bad faith or other extraordinary

---

[4] As the district court noted, driving while intoxicated and resisting an officer are not among the essential elements of aggravated flight. *Compare* La. Rev. Stat. § 14:108.1 (aggravated flight) *with* La. Rev. Stat. § 14:98 (driving while intoxicated) *and* La. Rev. Stat. § 40:1390 (resisting an officer).

No. 17-30519

circumstances); *Brown v. Estelle*, 530 F.2d 1280, 1282–83 (5th Cir. 1976) (recognizing that, in the context of a pre-trial habeas petition, a federal court may not normally enjoin state prosecution based on alleged speedy-trial violation); *Moore v. DeYoung*, 515 F.2d 437, 446 (3d Cir. 1975) ("[F]ederal courts should not permit the claimed denial of a speedy trial, presented in a pre-trial application for habeas, to result in the 'derailment of a pending state proceeding.'" (quoting *Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484, 493 (1973))). Accordingly, this, too, fails to warrant the extraordinary remedy of enjoining a state criminal proceeding.

## III.

Gates also appeals the district court's dismissal, with prejudice, of his claims pursuant to Fed. R. Civ. P. 41(b) for failure to prosecute. He contends that dismissal was inappropriate because any inaction was attributable to the district court's stay of the proceedings, at the state's request, rather than to his lack of effort in prosecuting his claims. The state responds that the stay of Gates's federal suit was due to his failure to appear before the state for a trial on his pending misdemeanor charges.

District courts have the authority, pursuant to both their own "'inherent power' . . . to manage their own affairs" and Rule 41(b) of the Federal Rules of Civil Procedure, to dismiss cases with prejudice for failure to prosecute. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962); *accord Morris v. Ocean Sys., Inc.*, 730 F.2d 248, 251 (5th Cir. 1984). However, because of the severity of the sanction, "we have stated that it is 'a drastic remedy to be used only in those situations where a lesser sanction would not better serve the interests of justice.'" *Morris*, 730 F.2d at 251 (quoting *Burden v. Yates*, 644 F.2d 503, 505 (5th Cir. 1981)). We review a district court's dismissal with prejudice for abuse of discretion. *Id.*

10

No. 17-30519

Dismissal with prejudice is appropriate only where there is "a showing of (a) a clear record of delay or contumacious conduct by the plaintiff, and (b) where lesser sanctions would not serve the best interests of justice." *Id.* at 252. Furthermore, we affirm dismissals with prejudice generally only where those prerequisites are accompanied by "certain 'aggravating factors,' such as (1) the extent to which the plaintiff, as distinguished from his counsel, was personally responsible for the delay, (2) the degree of actual prejudice to the defendant, and (3) whether the delay was the result of intentional conduct." *Id.* (quoting *Rogers v. Kroger Co.*, 669 F.2d 317, 320 (5th Cir. 1982)).

Here, there is a clear record of delay and contumacious conduct attributable to Gates himself. This matter was stayed in the district court for nearly ten years pending the resolution of Gates's underlying criminal charges. For over five years, that stay has been the result of Gates's failure to appear before the state to stand trial for his pending misdemeanor charges. We have previously instructed that, following *Heck v. Humphry*, 512 U.S. 477 (1994), district courts should stay § 1983 cases that may implicate the validity of pending criminal proceedings until those underlying proceedings have run their course. *See Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995) ("The court may—indeed should—stay proceedings in the section 1983 case until the pending criminal case has run its course, as until that time it may be difficult to determine the relation, if any, between the two."). Gates's intentional flight has prevented resolution of his pending misdemeanor charges and, pursuant to *Mackey* and *Heck*, has accordingly prevented him from prosecuting his § 1983 claims. Furthermore, Gates was warned, both in the district court's order and at a motions hearing, that failure to appear in state court or establish the inapplicability of *Younger* could result in dismissal with prejudice. Under the circumstances, the district court acted well within its discretion in concluding that lesser sanctions would be insufficient and dismissing Gates's

11

No. 17-30519

suit with prejudice. *See Nottingham v. Warden, Bill Clements Unit*, 837 F.3d 438, 442–43 (5th Cir. 2016) (affirming dismissal with prejudice where plaintiff had received prior warning).

**IV.**

Gates also argues that the district erred by denying his request for an evidentiary hearing and by making factual findings not supported by the record. Where the application of *Younger* does not turn on disputed facts, no evidentiary hearing is required. *See Boyd v. Farrin*, 575 F. App'x 517, 521 (5th Cir. 2014) (affirming dismissal of claims for injunctive relief pursuant to *Younger* without evidentiary hearing); *Mason v. Departmental Disciplinary Comm.*, 894 F.2d 512, 516 (2d Cir. 1990); *Jacobson v. Village of Northbrook Mun. Corp.*, 824 F.2d 567, 570 (7th Cir. 1987); *cf. Anderson v. Jackson*, 556 F.3d 351, 361 (5th Cir. 2009) (holding that district court did not abuse its discretion in denying preliminary injunction without holding evidentiary hearing where it did not rely on disputed facts in determining whether injunction should issue and where permitted extensive briefing and hear oral argument). Here, the district court did not abuse its discretion in denying the injunction without first holding an evidentiary hearing because it did not rely on any disputed facts in deciding whether to issue the injunction,[5] and there was extensive briefing as well as numerous hearings below at which the parties could present their claims.

---

[5] As noted above, the only disputed evidence arguably relevant to the *Younger* issue is the Abel affidavit in which Gates's former attorney states that the Miller letter was forged. But, given the above-noted weaknesses in that affidavit, *see supra* note 3, it did not create a dispute of fact necessitating an evidentiary hearing. *See Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1171 (7th Cir. 1997) (stating that the party seeking an evidentiary hearing "must show . . . that he has and intends to introduce evidence that if believed will so weaken the moving party's case as to affect the judge's decision on whether to issue an injunction").

No. 17-30519

Gates also contends that the district court made "numerous" erroneous factual findings. The only alleged error he actually identifies, however, is an allegedly unsupported statement regarding a blood-alcohol test performed at the hospital shortly after Gates's arrest. He argues that there is no competent evidence of that blood test that would be admissible at trial. However, whether the evidence of the blood-alcohol test would be admissible at trial is irrelevant here. The district court did not rely on that evidence in concluding that *Younger* abstention applied and that dismissal with prejudice was warranted.

## V.

Finally, Gates appears to contend that the district court erred by denying his Rule 60(b) motion for reconsideration. While not explicitly challenging the denial of the motion, he argues that the district court erred by finding his motion untimely. But the district court did not deny the motion as untimely. Rather, the district court analyzed the motion under the rubric of Fed. R. Civ. P. 60(b) rather than 59(e) based on its determination that the motion had been filed more than 28 days after the court's judgment. *See* Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."); *Benson v. St. Joseph Reg'l Health Ctr.*, 575 F.3d 542, 547 (5th Cir. 2009) (stating that courts "may treat an untimely 59(e) motion to alter or amend the judgment as if it were a Rule 60(b) motion" (quoting *Halicki v. La. Casino Cruises, Inc.*, 151 F.3d 465, 470 (5th Cir. 1998)). But here, Gates's motion was explicitly titled, and argued, as a "Rule 60 Motion." Furthermore, even if the district court did err by analyzing the motion as a Rule 60(b) motion, despite the motion being so styled, any error was harmless as the district court's reasons for denying the motion—including that the motion rehashed arguments previously raised and failed to present new, previously unavailable evidence—apply with equal force under Rule 59(e). *See Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004)

13

("This Court has held that [a Rule 59(e)] motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment.").

## VI.

For the foregoing reasons, we AFFIRM.