# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 25, 2022

Lyle W. Cayce
Clerk

No. 22-40306

In re: Lucas Babin,

*Petitioner*.

Petition for Writ of Mandamus
to the United States District Court
for the Eastern District of Texas
USDC No. 9:22-CV-31

Before Southwick, Graves, and Costa, *Circuit Judges*.

Per Curiam:[*]

Netflix Inc. sued a state district attorney in federal court. It sought to enjoin his prosecution of the company for promoting a film on its platform that allegedly contains child pornography. The district attorney moved for summary judgment. In an attempt to respond to the motion's arguments, Netflix sought emergency discovery into state court grand jury proceedings. The federal district court compelled *in camera* production of the grand jury materials, to be followed by other rulings after the inspection of the materials. The district attorney has now petitioned this court for a writ of mandamus ordering the district court to withdraw its discovery order.

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 22-40306

The district attorney has not identified any precedent in which this court has issued a writ of mandamus to prevent the production of grand jury materials for *in camera* inspection. That alone suggests that the petition is not well-founded. A writ of mandamus is an "extraordinary remedy" reserved for "extraordinary cases" in which certain predicate conditions must be established. *In re JPMorgan Chase & Co.*, 916 F.3d 494, 499 (5th Cir. 2019). The district attorney has not met these preconditions. We DENY the petition for a writ of mandamus.

FACTUAL AND PROCEDURAL BACKGROUND

Netflix, Inc. began streaming the film *Cuties* on September 9, 2020. According to Netflix's complaint in this case, "*Cuties* ('Mignonnes' in its native French) is the story of Amy, an eleven-year old Senegalese immigrant caught between cultures: her devoutly Muslim family and the 'Cuties' — a self-named dance group of Amy's peers who have their hearts set on trying out for and performing at a big dance competition in town." Certainly, Netflix's rather benign description does not capture the reasons for the controversies that have arisen about the film, but the eventual issue in this case is whether Netflix has broken any law that constitutionally can be applied to promoting the film. That ultimate issue is not before us now.

Lucas Babin, the district attorney in Tyler, Texas, obtained an indictment of Netflix under a Texas statute criminalizing the possession, access, or promotion of lewd visual material depicting a child. Tex. Pen. Code § 43.262. A grand jury returned that indictment, which Babin served on Netflix roughly three weeks after Netflix began streaming the film. On October 23, 2020, Netflix entered a plea of not guilty. The case largely stalled over the next year.

On October 26, 2021, the First Court of Appeals of Texas struck Section 43.262 as facially unconstitutional under the First Amendment in

substantially all of its applications. *Ex Parte Lowry*, 639 S.W.3d 151, 179 (Tex. App. — Houston [1st Dist.] 2021, *pet. granted* Mar. 2, 2022). Netflix presented Babin with the *Lowry* decision and requested dismissal of all charges under Section 43.262 charges. Babin did not comply, causing Netflix to file a pretrial petition for writ of *habeas corpus* with the state district court on November 15, 2021, asserting the facial unconstitutionality of Section 43.262.

In response, Babin sought a 120-day delay in Netflix's hearing on the *habeas* petition. During this delay, Babin obtained new indictments against Neftflix under Texas Penal Code Section 43.25(d), which criminalizes the production, direction, or promotion of "a performance that includes sexual conduct by a child." Tex. Pen. Code § 43.25(d). Babin then moved to dismiss Netflix's previous indictment under Section 43.262 on March 2, 2022. That motion was granted. He also established a policy on March 15, 2022, barring any prosecution under Section 43.262 until a conclusive judicial or legislative answer was given to the viability of such charges.

On March 3, 2022, the day after Babin moved to dismiss the Section 43.262 charges, Netflix filed suit in the United States District Court, Eastern District of Texas. Employing 42 U.S.C. § 1983, Netflix sought a temporary restraining order along with "preliminary and permanent injunctive relief to end Babin's unlawful and unconstitutional campaign." Netflix asserted federal question jurisdiction. It also alleged that "the Court has jurisdiction to enjoin pending criminal matters pending in state court under the bad-faith and patently-unconstitutional exceptions to *Younger v. Harris*, 401 U.S. 37 (1971)."

At a status conference on March 4, 2022, the parties stipulated that Netflix would not seek a temporary restraining order or other form of injunctive relief during the pendency of the action in federal court, "provided

that the state court cases . . . remain[ed] abated consistent with the agreements reached in [the] stipulation." The joint stipulation explicitly provided that "nothing . . . prevents either side from pursuing their claims or defenses . . . or otherwise preparing for the Hearing [set for June 14, 2022], such as the filing of additional or amended pleadings filing motions, seeking discovery (if any), etc."

Babin filed his answer and assertion of affirmative defenses on March 21, 2022. In his answer, Babin contested subject matter jurisdiction, asserting that "Plaintiff's claims concerning enforcement of Texas Penal Code Section 43.25 are barred by the *Younger* abstention doctrine." He also asserted, among other affirmative defenses, that "the independent intermediary doctrine bars any claim premised on an allegation that Defendant lacks probable cause to prosecute Plaintiff for violation of Texas Penal Code Sections 43.25 or 43.262."

On April 8, 2022, Babin sought summary judgment. He amended the motion two days later, asserting, among other arguments that Netflix's claims for relief relating to the Section 43.262 charges were moot and that Netflix's claims for relief relating to the Section 43.25 charges were barred by the *Younger* abstention doctrine. As to Netflix's claims relating to prosecution under Section 43.25, Babin stated "there is no constitutional violation by an official initiating criminal charges if the facts supporting the warrant or indictment are put before an impartial intermediary such as a magistrate or a grand jury, for that intermediary's independent decision breaks the causal chain and insulates the initiating party."

In response, Netflix filed an emergency motion to obtain discovery about grand jury proceedings on the basis that such information was needed due to Babin's invocation of the independent intermediary theory. After a hearing on May 9, 2022, the district court ordered Babin to produce the

No. 22-40306

requested grand jury discovery for *in camera* review by May 12.  It also stated that "after the Court has inspected the submitted materials and interrogatory responses, it will enter a further order consistent with its *in camera* findings."

Babin filed for reconsideration and also for additional time to comply in the district court.  The district court rejected the requests.  Babin then turned to this court, petitioning for a writ of mandamus to require the district court to withdraw its order for discovery.  We granted a temporary stay of the district court proceedings, ordered a response from Netflix, and invited the district court to address the petition.  We received filings from both Netfix and the district court.  Our analysis follows.

## DISCUSSION

A writ of mandamus is an "extraordinary remedy reserved for really extraordinary cases;" it will be issued only "if three conditions are met." *JPMorgan Chase*, 916 F.3d at 499 (quotation marks and citation omitted). "First, the petitioner must have no other adequate means to attain the relief he desires.  Second, this court must be satisfied that the writ is appropriate under the circumstances.  Third, the petitioner must demonstrate a clear and indisputable right to the writ." *Id.* (quotation marks and citations omitted).

Babin asserts that mandamus relief is merited under four theories. First, he argues that the district court had no authority to interfere with the ongoing prosecution of Netflix under Texas Penal Code Section 43.25 under the *Younger* abstention doctrine.  Second, Babin claims that the independent intermediary theory that he pursued in his motion for summary judgment did not open the door to grand jury discovery because Netflix had neither pled nor otherwise shown that anything improper had occurred before the Tyler County Grand Jury.  Third, Babin argues that the federal district court had no jurisdiction to order the production of grand jury materials under Texas

law.  Finally, and relatedly, he argues that producing those materials would force him to violate state law.

We consider each argument.

### I.    Younger *Abstention*

Babin argues that under *Younger v. Harris*, the district court's discovery ruling improperly interferes with Babin's ongoing prosecution of Netflix in state court.  Babin argues he has satisfied the requirements for issuance of a writ of mandamus because the district court's failure to abstain subjects Babin to harms that cannot be remedied on appeal.  Those alleged harms relate to what Babin characterizes as broad discovery into the state criminal justice system regarding an ongoing or potential criminal prosecution.

Netflix responds that *Younger* itself recognized that abstention did not apply when "the state court proceeding was brought in bad faith" or with the intent to harass or when "the state statute is flagrantly and patently violative of express constitutional prohibitions" in all aspects and applications.  *Texas Ass'n of Bus. v. Earle*, 388 F.3d 515, 519 (5th Cir. 2004) (citing *Younger*, 401 U.S. at 49).

We conclude *Younger* need not be considered at this point in the case.  We so decide in part because Babin delayed raising the doctrine as a reason not to order this discovery.  It is true that Netflix brought this suit explicitly relying on an exception stated in *Younger* for prosecutions brought in bad faith. *See Younger*, 401 U.S. at 54.  Babin insisted that *Younger* abstention did apply.  He also raised *Younger* as a defense against Netflix's Section 43.25-related counts in his motion for summary judgment.  In his initial opposition to Netflix's motion to compel grand jury discovery, though, Babin did not argue that *Younger* abstention applied.  He finally raised it in his motion for reconsideration of the district court's order.

We do not overlook the intrusion into state criminal proceedings inherent even in the requirement simply to provide information for *in camera* review by a district judge.  In light of the belated assertion of the doctrine as relevant to the discovery motion, and because of the limits of what has been ordered so far, though, we conclude that the district court did not need to abstain. Nonetheless, *Younger* is a serious consideration that the district court should address at the earliest opportunity.  For now, we conclude that *Younger* can wait, but not long.

## II.     *Independent intermediary doctrine*

We now consider Babin's assertion of an "independent intermediary defense."  When "the facts supporting the warrant or indictment are put before an impartial intermediary such as a magistrate or grand jury . . . that intermediary's independent decision breaks the causal chain." *See Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988) (emphasis removed) (quotation marks and citation removed).  If "it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant," then the doctrine will not apply. *Id.* at 1428.

Babin argues that Netflix's complaint fails to allege sufficient facts to support discovery to refute his independent intermediary defense.  One standard for judging pleading sufficiency is this: "mere allegations of taint . . . may be adequate to survive a motion to dismiss where the complaint alleges other facts supporting the inference." *Wilson v. Stroman*, --- F.4th ---, 2022 WL 1261660, at *7 (5th Cir. Apr. 28, 2022) (alteration in original) (quotation marks and citations omitted).  We identified the obvious for plaintiffs in such cases, which is that because of the secrecy of grand jury proceedings,

> it is understandably difficult for a plaintiff to know what was said — or wasn't said — to the grand jury absent any form of discovery. While that reality doesn't excuse pleading requirements, it does mean that allegations about what was

> presented or omitted in the grand jury room will in some sense
> be speculative, which is why plaintiffs like the ones here will
> need to allege "other facts supporting the inference" of what
> they allege to have occurred in the grand jury room.

*Id.* (quoting *McLin v. Ard*, 866 F.3d 682, 690 (5th Cir. 2017)).

We apply that standard here. The district court rejected Babin's arguments of inadequate pleadings by referring to one of its earlier orders that had identified multiple allegations of "'bad faith' and 'gamesmanship' that [Netflix] contends may have tainted the underlying grand jury proceedings." Those incidents include Babin's request for more time to respond to Netflix's petition for *habeas* relief from the first indictment, while using some of that time to prepare a new indictment. We agree that the complaint contained enough to satisfy the requirement of plausibly pleading a taint in grand jury proceedings, without speculating and before discovery. Consequently, Babin does not have a "clear and indisputable" entitlement to mandamus under his theory that Netflix's pleadings were deficient to support a discovery order precipitated by Babin's own motion for summary judgment. *See JPMorgan Chase*, 916 F.3d at 499.

### III.     *Grand jury material treatment under state law*

Babin's third argument is that the district court had no authority under the Texas Code of Criminal Procedure to order grand jury discovery. That Code has a provision that bars attorneys representing the state from disclosing "anything transpiring before the grand jury," though there are enumerated exceptions. Tex. Code Crim. Proc. art. 20A.204(a). Among these exceptions is this: "The defendant may petition a court to order the disclosure of information made secret by Article . . . 20A.204 . . . as a matter preliminary to or in connection with a judicial proceeding. The court may order disclosure of the information if the defendant shows a particularized need." Tex. Code Crim. Proc. art. 20A.205(a). The

No. 22-40306

Code also provides that such a petition "must be filed in the district court in which the case is pending." Tᴇх. Cᴏᴅᴇ Cʀɪᴍ. Pʀᴏᴄ. art. 20A.205(b).

Babin argues that because Netflix has filed no petition for grand jury information in the state trial court where the grand jury met, Netflix cannot obtain the grand jury material under Article 20A.205. The district court concluded there was ambiguity in the statutory language concerning where the petition was to be filed. We do not analyze ambiguity but will discuss the additional reason for the discovery order, namely, that the court agreed with the reasoning of at least three other federal district courts in Texas that had ordered similar discovery of state grand jury proceedings. We will review one of those decisions.

One example of such discovery arose in a Section 1983 case in which the plaintiffs were the family of someone who had been shot and killed by a city policeman. *Sanchez v. Gomez*, No. 17-CV-133, 2019 WL 12536398, at *1 (W.D. Tex. Apr. 29, 2019). A state grand jury that had indicted the officer heard testimony from several witnesses to the shooting, and an expert designated by the defendant officer in the Section 1983 case would rely on that grand jury testimony. *Id.* The *Sanchez* court, in an opinion by a magistrate judge, stated that there was a particularized need for this grand jury testimony. It had been disclosed to the defense expert witness, and the plaintiff could not properly cross-examine the witness without reviewing that same grand jury testimony. *Id.* at *2. Thus, a factual necessity existed. For a legal basis, the court stated that "in cases where a plaintiff's claim arises under federal law, unless state law supplies the rule of decision for an element of a claim or defense, federal common law is the source of any privileges afforded to grand jury proceedings." *Id.* Among its authorities was one of this court's decisions in which we relied on an evidentiary rule which states that absent anything to the contrary in the federal Constitution, federal statute, or a Supreme Court rule, privilege is controlled by federal common

law. *American Civ. Liberties Union of Miss., Inc. v. Finch*, 638 F.2d 1336, 1342–43 (5th Cir. 1981) (citing FED. R. EVID. 501). Our decision involved a Mississippi statute that sealed the records of a state investigatory commission for 50 years; we held the statute did not create an evidentiary privilege that the federal courts were compelled to respect. *Id.* at 1344–50.

The confidential nature of grand jury proceedings protects the witnesses who appear as well as the deliberations of the grand jury itself. The wall of secrecy is not impregnable, of course. The Texas rule for acquiring such information is being discussed in this case, and a federal criminal procedure rule also permits disclosure of grand jury proceedings in proper circumstances. *See* FED. R. CRIM. P. 6(e)(3). In federal court, we have applied a balancing test of whether the "need for disclosure outweighs the interest in continued grand jury secrecy." *In re Corrugated Container Antitrust Litig.*, 687 F.2d 52, 56 (5th Cir. 1982).

Certainly, there can be a need for discovery of grand jury proceedings in a lawsuit asserting that a prosecution is being brought in a violation of federal rights. Netflix argues that need exists here, and the district court was preliminarily receptive to that argument. Limiting a party in federal court to the procedures for accessing grand jury material that are provided by state law — procedures that could result in a state court's denial of discovery — would thwart a federal court's determination that discovery is required for the court to proceed.

Related to that possibility, the district court in its response to the mandamus petition discusses caselaw that had not earlier been identified. That response cited opinions from the Fourth, Seventh, and Tenth Circuits which concluded that federal-state comity may, in the ordinary case, counsel the district court to require a party seeking state grand jury discovery first to go to state court and follow the proper procedures there. *See United States v.*

*Silva*, 745 F.2d 840, 844–45 (4th Cir. 1984); *Socialist Workers Party v. Grubisic*, 619 F.2d 641, 643 (7th Cir. 1980); *United States ex rel. Woodard v. Tynan*, 757 F.2d 1085, 1090 (10th Cir. 1985).

The district court considered such caselaw inapplicable in part because this was not an "ordinary case." More importantly, the district court determined that the interests of comity were hardly sustained by this practice, which allows a state court an initial but not a final word on disclosure. The Seventh Circuit explains why the final word is for the federal court:

> As we have already noted, of course, federal law determines the scope of the privilege covering these materials, and the *requirement that these plaintiffs first seek disclosure through the avenues available to them in the state court does not give the state courts a veto over disclosure in this federal civil rights case*. This preliminary stage is designed merely to forestall unnecessary intrusion by the federal courts in state grand jury proceedings or, at least, to ensure that the important state interest in secrecy is thoroughly considered. On the other hand, although the state court may determine that the materials are privileged under state law, *only the federal court may determine whether the materials are privileged under federal common law*. In this way the federal interest in disclosure will be properly considered preliminarily to a final decision on the privilege issue.

*Socialist Workers Party*, 619 F.2d at 644 (emphasis added).

Because the state court is merely given an opportunity to allow discovery and no final authority to disallow it, the district court in our case concluded that the procedure would create a "hopeless tangle of prudential, jurisdictional, and constitutional issues" when a state court refuses to permit grand jury discovery.

We have not been shown any example of an effort by this circuit to consider the approach of the three circuits identified by the district court. Such caselaw from other circuits is not dispositive on whether there is a "clear and indisputable" right to a writ of mandamus. Regardless of the precise reasoning that justifies a federal court to require discovery of state grand jury proceedings, we conclude that Babin has not demonstrated entitlement to mandamus relief under this theory.

### IV.     *Violation of state law*

Babin's final argument, related to his third, is that the district court has ordered him to violate his duty of non-disclosure under Article 20A.204 of the Texas Code of Criminal Procedure. Even assuming he could establish the first two elements for mandamus relief, which are that there are no other adequate means to attain relief and that mandamus is appropriate, his petition again fails on the third: demonstrating "clear and indisputable right to the writ." *JPMorgan Chase*, 916 F.3d at 499. We have been cited to no caselaw that a state district attorney's complying with a federal court order to provide certain grand jury materials would violate state law, leaving this district attorney without a "clear and indisputable" right to our court prohibiting such disclosure.

The petition for a writ of mandamus is DENIED.